**In re Roy Lee STONE, a/k/a R.L. Stone and Mary Elizabeth Stone, f/d/b/a West Texas Pride Construction, Inc., Debtors.**

**GENERAL STEEL WAREHOUSE, INC., Plaintiff,**

**v.**

**FIRST STATE BANK OF SHALLOWATER, Defendant.**

**Bankruptcy No. 583–00156.**

**Adv. No. 585–5019.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

Feb. 28, 1985.

Walker Metcalf, Stephen L. Johnson, Lubbock, Tex., for plaintiff.

James W. Bowman, Lubbock, Tex., for First State Bank of Shallowater.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

General Steel Warehouse, Inc. ("General Steel") filed complaint against First State Bank of Shallowater ("Bank"), seeking determination of priority of liens claimed by General Steel and by the bank against the debtors' property. The following summary constitutes findings of fact and conclusions of law after nonjury trial.

Roy Lee Stone and Mary Elizabeth Stone, debtors, formerly conducted business in Lubbock County, Texas, under the common name and style of West Texas Pride Construction. For many years First State Bank of Shallowater had provided business loans, as well as nonbusiness loans, to the debtors. They filed petition for order for relief under Chapter 7 of Title 11 United States Code on August 1, 1983. On the date the bankruptcy petition was filed they were indebted to the bank on three separate notes, the first dated April 29, 1975, in the original principal sum of $44,000.00 upon which an approximate balance of $18,000.00 was owed, the second dated May 10, 1976, in the original sum of

$160,000.00, guaranteed by Small Business Administration, upon which the approximate amount of $40,000.00 was due and the third dated May 5, 1982, in the original sum of $15,000.00 upon which the approximate amount of $16,000.00 was owed. The $44,-000.00 note dated April 20, 1975, was secured by a deed of trust against a tract of land in Lubbock County, Texas, owned by the debtors. A recitation in the deed of trust reflected that not only was the deed of trust given to secure the $44,000.00 note but in addition it purported to "also secure all sums now owing or hereafter at anytime prior to the final release hereof to become owing by [debtor] to [bank], whether direct, primary, secondary, or contingent and shall further secure all unpaid balances whether by renewals, extensions, or otherwise of all existing indebtedness and any additional loan or loans made to [debtors]."

Approximately one year later on May 10, 1976, bank loaned an additional sum of $160,000.00 to the debtors, with that second loan being guaranteed by Small Business Administration. A second deed of trust dated May 14, 1976, containing similar provisions for future advances, was recorded in the Office of the County Clerk of Lubbock County, Texas, more than two years later on August 4, 1978. The fact that the deed of trust was dated only four days after the SBA guaranteed loan was made might justify some thought that the second deed of trust was given to secure the SBA guaranteed loan. However, whether from scrivener's error or by design, only the earlier April 29, 1975 note in the principal amount of $44,000.00 was described as being the indebtedness specifically secured by that second deed of trust.

A third deed of trust was executed on May 5, 1982, and recorded on May 10, 1982, encumbering other real estate owned by the debtors to secure a $15,000.00 note executed by the debtors to the bank on that date.

On November 23, 1982, General Steel obtained a judgment against the debtor in the principal sum of $29,459.13 in the 237th District Court of Lubbock County, Texas, in cause number 92,012. The judgment was abstracted and recorded in the Judgment Records of Lubbock County, Texas, on January 5, 1983, and, for the purposes of this memorandum, the abstracting and recording of the judgment affixed a judgment lien against all nonexempt property of the debtors, subject, of course, to any earlier encumbrances which were properly fixed. The parties have stipulated that the reasonable value of the nonexempt real estate of the debtors does not exceed the total of the three notes owed by the debtors to the bank. The argument advanced by General Steel, however, is that the approximate balance of $40,000.00 owing by the debtors on the May 10, 1976, note to the bank, guaranteed by SBA, is not secured by a lien against the real estate and that its judgment lien should enjoy priority in payment over that of the May 10, 1976 note. It bases that argument on the fact that there was no showing that the May 14, 1976 deed of trust secured the $160,000.00 note executed four days earlier on May 10, 1976, because that note was not described in the deed of trust. The bank counters with its assertion that its "future advancements" clause in the April 29, 1975 deed of trust secures the $160,000.00 note, even if this court concluded that the May 14, 1976 deed of trust was ineffective for that purpose. The rejoinder by General Steel is that the $160,000.00 note was not within the contemplation of the parties at the time of the April 29, 1975 note and deed of trust and that therefore the "future advancements" clause was ineffective to secure the $160,000.00 note.

The validity of future advancement clauses, or "dragnet" clauses as they sometimes are called, are recognized under Texas Statutory and Case Law. Tex.Bus. & Com.C. § 9.204(c) [1]; *Estes v. Republic Na-*

---

**1.** § 9.204. After-Acquired Property; Future Advances.

(c) Obligations covered by a security agreement may include future advances or other val-

ue whether or not the advances or value are given pursuant to commitment.

*tional Bank*, 462 S.W.2d 273 (Tex.1970). There is some older authority that Texas courts do not recognize the application of a future advances clause unless the future advances to be secured were "reasonably within the contemplation of the parties to the mortgage at the time it was made." *See Wood v. Parker Square State Bank*, 400 S.W.2d 898, 901 (Tex.1966); *Moss v. Hipp*, 387 S.W.2d 656 (Tex.1965).

The United States Court of Appeals for the Fifth Circuit has set out some general concepts by which the validity of dragnet clauses in Texas mortgages will be considered. *See Kimbell Foods, Inc. v. Republic National Bank*, 557 F.2d 491 (5th Cir.1977), cert. granted 436 U.S. 903, 98 S.Ct. 2230, 56 L.Ed.2d 400 (1978), affirmed 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). The subsequent indebtedness must arise directly out of transactions between the parties to the mortgage ... a future advance clause in a mortgage does not secure a subsequent debt from the debtor to a third party acquired from that third party by the original mortgagee. Further, the language of the contract must clearly and unambiguously reflect the intention of the parties to cover subsequent advances. Finally, the subsequent indebtedness must be of the same class or character as the first indebtedness.

The future advancement clause in the April 29, 1975, deed of trust clearly and unambiguously set out the parties' intention that future indebtednesses shall be secured by that deed of trust. There is no evidence whatsoever that the dragnet clause was included in the deed of trust by mutual mistake. On the contrary the president of the bank testified that at the time of the April 1975 deed of trust it was his policy to specifically point out to borrowers that the deed of trust contained a provision for future advancements, so that the lien provided by the deed of trust would be security for all debts owed or to be owed by the parties to the bank. He testified further that he was confident that he did discuss the future advancements clause with the debtors on each of the three occasions when the deeds of trust which are relevant to this memorandum were executed and delivered. That testimony essentially was unchallenged. It is clear that the May 10, 1976, loan represents an indebtedness which arose directly out of transactions between the same parties as those of April 29, 1975. Each of those debts was for a business purpose and thus of the same class or character. Future advances secured by an earlier security device take priority from the date of that earlier security device.

I conclude, therefore, that the future advancements or "dragnet" clause of the April 29, 1975 deed of trust effectively secured the May 10, 1976 note in the principal amount of $160,000.00. I conclude further that the bank's liens securing the balances of $18,322.28 due on the promissory note dated April 29, 1975, and $40,665.26 due on the promissory note dated May 10, 1976, are superior to the judgment lien of General Steel Warehouse, Inc., at least as far as the real estate described on the April 29, 1975 deed of trust is concerned. The May 5, 1982 deed of trust, securing the debtor's note in the principal sum of $15,-000.00, described other real estate and its priority over the later filed judgment lien by General Steel Warehouse does not appear to be challenged.

It is, therefore, ORDERED by the Court that the complaint by General Steel Warehouse, Inc. against First State Bank of Shallowater, challenging the priority of the deeds of trust held by First State Bank of Shallowater over the judgment lien of General Steel Warehouse, Inc., be, and it is hereby, DENIED and General Steel Warehouse, Inc. shall take nothing against First State Bank of Shallowater.

LET JUDGMENT BE ENTERED ACCORDINGLY.