**In re Tommy M. FELKER, Kathy J. Felker, Debtors.**

**Bankruptcy No. 94–53336.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

May 23, 1995.

Don E. Snow, Thomaston, GA, for debtors.

Emmett L. Goodman, Jr., Macon, GA, for Bank of Upson.

Camille Hope, Chapter 13 Trustee, Macon, GA.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Objection to Confirmation by Bank of Upson,

(the "Bank"), a creditor in this case. Tommy Felker and Kathy Felker (collectively the "Debtors") have also objected to the claim asserted by the Bank. At issue is the Bank's secured status under a so-called "dragnet clause" contained in a deed to secure debt. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(K) and (L). For the reasons stated, the Court will sustain Debtors' objections in part, and deny the Bank's objection to confirmation. These findings of fact and conclusions of law are published pursuant to Fed.R.Bankr.P. 7052.

## FINDINGS OF FACT

On April 23, 1990, Debtors' obtained a loan from the Bank in the amount of Twenty-two Thousand Nine Hundred Eighty Dollars ($22,980.00). In return, Debtors' granted the Bank a first lien on Debtors' principal residence evidenced by a note and deed to secure debt. The deed to secure debt provides in pertinent part:

Also, this deed is being given to secure any and all present and future indebtedness, direct and indirect, and all extensions, renewals or part renewals thereof, which may now be owing or become owing to the Bank of Upson, Thomaston, Georgia by the grantors herein.

Subsequently, Kathy Felker obtained a loan from the Bank in the original amount of Two Thousand One Hundred Thirteen Dollars and Twenty-four Cents ($2,113.24). Later, Tommy Felker obtained a loan from the Bank in the original amount of Two Thousand One Hundred Five Dollars and Sixty-nine Cents ($2,105.69). Each of these loans was incurred individually with no recitation of collateral in the notes evidencing each debt. The present debt on Tommy Felker's note is One Thousand One Hundred Forty-four Dollars and Twenty-eight Cents ($1,144.28). The present debt on Kathy Felker's note is One Thousand One Hundred Twenty-Three Dollars and Seventy-six Cents ($1,123.76).

Debtors' also obtained a credit card from the Bank with Kathy Felker signing as the applicant and Tommy Felker as the co-applicant. The Bank is owed Nine Hundred Thirty-eight Dollars and Seventy-four Cents ($938.74) based on this credit card. Besides the mortgage on Debtors' residence, this is the only debt between the Bank and Debtors entered into by Debtors in their joint capacity.

On May 20, 1993, after Debtors and the Bank entered into the various loan and credit transactions described above, Debtors obtained a loan from Georgia Home Loan, Inc., in the amount of Ten Thousand Dollars ($10,000.00). Georgia Home Loan, Inc. assigned its interest to The Money Store. As a result, The Money Store holds a junior lien on Debtors' principal residence.

The Bank argues that the "dragnet clause" contained in the deed to secure debt gives the Bank secured status as to all its claims against Debtors. Debtors contest the Bank's secured status in all the subsequent debts and propose to treat these debts as unsecured in their Chapter 13 plan.

## CONCLUSIONS OF LAW

Debtors have advanced several arguments against allowance of the Bank's claims as secured, which may be summarized as follows:

1. The two individual notes were signed by the husband and wife respectively and not by the husband and wife as the same "parties" to the security deed.

2. There was no intangibles tax paid on any of the three claims which are supposedly subject to the dragnet clause.

3. The three claims supposedly subject to the dragnet clause did not comply with the Real Estate Settlement and Procedures Act ("RESPA").

4. The conveyance of a second mortgage to The Money Tree on May 20, 1993, eliminates operation of the dragnet clause pursuant to O.C.G.A. § 44–14–2.

Although not raised at the hearing on this matter, Debtors have also advanced the argument in their brief that the Bank has violated various provisions of the Truth In Lending Act, 15 U.S.C. § 1601, et seq.

Prior to addressing Debtors' contentions, the Court notes that the Bank's claim is deemed allowed as filed, and the proof of

claim filed in this case is prima facie evidence of the validity and amount of the claim. 11 U.S.C. § 502(a); Fed.R.Bankr.P. 3001(f). Hence, Debtors bear the initial burden of demonstrating "by probative force equal to that of the allegations of the proofs of claims themselves" that the Bank's claim should not be allowed as filed. 3 King, Collier on Bankruptcy, ¶ 502.02, pp. 502–22—502–23 (15th Ed.1994). Achieving this, the ultimate burden falls upon the Bank to show by a preponderance of the evidence that its proof of claim should be allowed as filed. *Id.* at 502–22; *Accord Juniper Development Group v. Kahn (In re Hemingway Transport, Inc.),* 993 F.2d 915 (1st Cir.1993); *In re Williams,* 1994 WL 329328, No. 92–50546, slip op. at 3 (Bankr.S.D.Ga. Mar. 30, 1994).

■ The procedural posture of Debtors' motion is irregular. Pursuant to Fed. R.Bankr.P. 3007 and 7001(2), objections to proofs of claim which seek to dispute the "validity, priority, or extent of a lien or other interest in property" should be brought as adversary proceedings rather than via motion practice under Fed.R.Bankr.P. 9014. Fed.R.Bankr.P. 7001(2). Motions which seek a determination regarding "what property is subject to the security agreement or what amount of the secured parties' claims is secured by the property in question" are properly brought as adversary proceedings. *Grieves v. Bank of Western Indiana (In re Grieves),* 81 B.R. 912, 960 (Bankr.N.D.Ind. 1987). The failure to bring such actions as adversary proceedings may result in vacatur of the Court's orders entered via motion practice. *Matter of Perkins,* 902 F.2d 1254 (7th Cir.1990). Thus, such a procedural defect could jeopardize the finality of the proceedings.

However, this defect is not jurisdictional, and may be waived. *Matter of Pence,* 905 F.2d 1107, 1109 (7th Cir.1990); *United States v. Georgia Bank & Trust Co. (In re Littleton),* 177 B.R. 407, 408 (Bankr.S.D.Ga.1995). The failure of any party to raise this issue either at the hearing or subsequently at the Court's invitation to brief the issues evidences such waiver by the parties. *In re Duke,* 153 B.R. 913, 914 (Bankr.N.D.Ala. 1993); *In re Data Entry Service Corp.,* 81

B.R. 467, 468 (Bankr.N.D.Ill.1988). Moreover, this Court is satisfied that "the rights of the affected parties have been adequately presented so that no prejudice has arisen...." *See In re Command Services Corp.,* 102 B.R. 905 (Bankr.N.D.N.Y.1989) and cases cited therein. Therefore, the Court will proceed to address the parties' contentions on the merits.

■ Debtors first dispute the extent of the Bank's secured status by asserting that the dragnet clause contained in the deed to secure debt was not entered into by the same parties as the subsequent notes. Debtors' contentions have merit.

Georgia law recognizes the validity of dragnet clauses. The Georgia Code provides:

> The operation of "open end" clauses contained in real estate mortgages or deeds conveying realty as security for a debt, which clauses provide that, in addition to securing the debt named or described in the instrument, such instruments or the property thereby conveyed shall also secure any other debt or obligation that may be or become owing by the mortgagor or grantor, is limited to other debts or obligations arising ex contractu, as distinguished from those arising ex delicto, between the original parties to the security instrument.

O.C.G.A. § 44–14–1(b) (Michie 1991 & Supp. 1994).

■ The Georgia Supreme Court has stated "A security deed containing an open-end or dragnet clause will continue to be effective so long as an indebtedness arising out of contract between the original parties to the deed continuously exists from the deed's date." *Brinson v. McMillan,* 263 Ga. 802, 440 S.E.2d 22 (1994). New debts are deemed to be secured so long as the original secured indebtedness exists, subject only to the statutory requirements of the Georgia Code. *Citizens & Southern DeKalb Bank v. Hicks, et al.,* 232 Ga. 244, 206 S.E.2d 22 (1974); *Tedesco v. CDC Federal Credit Union,* 167 Ga.App. 337, 306 S.E.2d 397 (1983). The operation of such clauses under the Georgia Code is limited to subsequent agree-

ments between the same parties. *Rainer, et al. v. Security Bank & Trust Co.,* 182 Ga. App. 171, 354 S.E.2d 882 (1987). The Court must determine, therefore, whether the subsequent debt claimed to be secured by the dragnet clause was entered into by the same parties as the deed to secure debt, and whether the debt claimed to be secured was of the type the parties intended to be covered by the clause.

The language of the dragnet clause extends to "any and all present and future indebtedness, direct and indirect, and all extensions, renewals or part renewals thereof, which may now be owing or become owing to the Bank...." Debtors argue that intent is a requirement. The intent of the parties as stated in the mortgage is unambiguous. The intention of the parties at the time the subsequent debt was created is immaterial. *Citizens & Southern National Bank v. Gilbert,* 130 Ga.App. 219, 202 S.E.2d 718 (1973). The Court finds that the language of the dragnet clause is broad enough to encompass the debts before the Court. However, the debt must still satisfy Georgia law as being "between the original parties to the security instrument." O.C.G.A. § 44–14–1(b).

A review of Georgia law reveals that where deeds to secure debt containing dragnet clauses are entered into jointly by the grantors, and there is no evidence that the parties intended the deed to secure the subsequent several liability of one of the grantors, the dragnet clauses will only secure the grantors' subsequent joint liabilities. Thus, in the case of *Cordele Banking Co. v. Powers,* 217 Ga. 616, 124 S.E.2d 275 (1962), the court found that where the husband and wife had executed a deed to secure debt containing a dragnet clause jointly as the "party of the first part," the dragnet clause would not secure the subsequent individual debt of the husband alone. *Cordele,* 217 Ga. at 620, 124 S.E.2d at 278. A similar result was reached in the case of *Bank of La Fayette v. Giles,* 208 Ga. 674, 69 S.E.2d 78 (1952) where the court found that a dragnet clause contained in a deed to secure debt entered into jointly by the husband and wife would not secure the subsequent debt of the husband and a third party. *Giles,* 208 Ga. at 678–82, 69

S.E.2d at 82–83. *See also Americus Finance Co. v. Wilson, et al.,* 189 Ga. 635, 7 S.E.2d 259 (1940).

In contrast, where four individuals entered into a deed to secure debt containing a dragnet clause jointly and severally, the court found that the dragnet clause would secure the subsequent individual debt of two of the four individuals. *Willis, et al. v. Rabun County Bank,* 249 Ga. 493, 291 S.E.2d 715 (1982). The fact that the deed to secure debt was entered into jointly *and* severally made the subsequent debt of the individuals subject to the dragnet clause. *Willis,* 249 Ga. at 494, 291 S.E.2d at 717. This principle was also demonstrated in the case of *Sutton v. Atlantic Bank and Trust Co.,* 167 Ga.App. 861, 307 S.E.2d 746 (1983) where the court found that because the term "Grantor" in the deed to secure debt was defined as including both the singular and the plural, the dragnet clause would secure the subsequent debts of one of the signatories to the deed. *Sutton,* 167 Ga.App. at 863, 307 S.E.2d at 747.

In this case, the deed to secure debt was entered into jointly, and does not reflect an intent that subsequent debt of the individual husband or wife be secured by the instrument. Both Tommy and Kathy Felker are jointly referred to as the "first party." The language of the dragnet clause states that it is intended to secure future indebtedness of the "Grantors." There is no indication that either Debtors or the Bank intended subsequent individual liability of the several signatories to fall within the reach of the dragnet clause. Hence, this case is more analogous to the facts of *Cordele* and *Giles,* as discussed above, than the facts of *Sutton* or *Willis.*

The Court finds that the dragnet clause contained in the deed to secure debt before the Court will not secure subsequent individual debts of Debtors. Debtors have successfully rebutted the presumption of validity the Bankruptcy Code and Rules confer upon the Bank's claims. The Bank has failed to demonstrate by a preponderance of the evidence that its claims based on the individual notes for $2,113.24 and $2,105.69 are entitled to secured status in this case. These debts will be treated as unsecured in this bankruptcy

case. This finding, however, does not end the Court's inquiry.

■ Debtors also possess a credit card issued through the Bank. The credit card was applied for jointly with Kathy Felker signing as the applicant and Tommy Felker as the co-applicant. Therefore, the Court must review Debtors remaining contentions to determine if such debt is to be treated as secured in this bankruptcy case.

■ Debtors contend that the Bank failed to pay an intangibles recording tax on the debt required by Georgia law. The Court finds this contention to be without merit. The Georgia Code at O.C.G.A. § 48–6–61 requires secured creditors possessing long term notes secured by real estate to pay an intangibles recording tax. The credit card debt does not fit the definition of a long term note secured by real estate.

The credit card debt is neither long term nor a note. The phrase "long term note secured by real estate" as used in O.C.G.A. § 48–6–61 is defined as follows:

> "Long term note secured by real estate" means any note representing credits secured by real estate by means of mortgages, deeds to secure debt, purchase money deeds to secure debt, bonds for title, or any other form of security instrument, when any part of the principal of the note falls due more than three years from the date of the note or from the date of any instrument executed to secure the note and conveying or creating a lien or encumbrance on real estate for such purpose.

O.C.G.A. § 48–6–60(2) (Michie 1991 & Supp. 1994).[1]

In order to require an intangibles tax to be paid, the debt before the Court would have to fall due more than three years from the date of the debt or the deed to secure debt containing the dragnet clause. The credit card is in the nature of a revolving line of credit with the principal debt falling due monthly rather than a note with the principal falling

due more than three years in the future. The instrument creating the security interest is the deed to secure debt, rather than the agreement governing the credit card debt. Debtors do not contend that the deed to secure debt or the original mortgage on their real estate is defective. The credit agreement by which Debtors obtained a revolving line of credit with the Bank does not fall within the definition of security instruments which must be recorded and on which an intangibles tax must be paid. O.C.G.A. § 48–6–60.

■ Debtors next challenge the Bank's claim stating that the Bank failed to comply with the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C.A. § 2601 et seq. The Court finds Debtors' argument to be without merit. All federally-related mortgage loans are governed by RESPA. 24 CFR § 3500.5(a), 12 U.S.C.A. foll. § 2617. The Bank directs the Court to the language of the 1992 version of RESPA excepting "A home improvement loan, loan to refinance, or other loan where the proceeds are not used to finance the purchase or transfer of legal title to the property ..." from coverage under RESPA. 24 CFR § 3500.5(d)(2), 12 U.S.C.A. foll. § 2617 (West 1992). If the language of this section were applicable to the present case, the issue would be settled as Debtors have not alleged that the credit card debt was used to finance the purchase of real estate. However, the debt in question was incurred following March 16, 1993, and the 1993 version of RESPA therefore governs.[2]

The 1993 version of RESPA does not contain the language cited by the Bank. Nevertheless, the focus of the applicability of RESPA is on the purpose of the loan rather than on the source of the security. Even if the Court were to accept the notion that a credit card debt would constitute a loan under RESPA, Debtors have not alleged that the debt was incurred as a mortgage loan. The

---

1. The Georgia legislature has amended this Code section. However, the 1994 amendment did not become effective until January 1, 1995, and merely changed the numeral designation of this subsection rather than the text. Hence, the amendment does not have any bearing on the matter before the Court.

2. The effective date of the 1993 version of RESPA was December 2, 1992. 57 FR 49600.

fact that the debt may be subject to a dragnet clause in a prior deed to secure debt does not transform consumer credit debt into a mortgage loan. Under Debtors' rationale, any debt subject to a dragnet clause would be a federally-related mortgage loan, regardless of the source of the debt.

Moreover, RESPA by its very terms only applies to long-term financing arrangements such as loans used as "permanent financing to finance transfer of title ..." or a "construction loan ... if its term is in excess of two years." 24 CFR § 3500(b)(2), 12 U.S.C.A. foll. § 2617 (West 1993). Debtors have failed to carry their burden of demonstrating any infirmity in the Bank's claim based on RESPA.

■■■■ Debtors next assail the Bank's claim stating that the second mortgage on their home held by The Money Tree cuts off the effectiveness of the dragnet clause, and hence the secured status of the Bank's claims. Georgia law provides that a junior security interest will cut off the operation of dragnet clauses contained in previously executed deeds to secure debt upon actual notice to the first lienholder of such junior lien. The Georgia Code provides:

> Except for the advances set out in subsection (a) of this Code section, any extension of credit to the mortgagor or grantor after July 1, 1980, as to any debt or obligation arising subsequent to the actual notice of transfer of property or any valuable interest therein as provided in this subsection shall not be secured by virtue of the operation of an "open-end" clause described in Code Section 44-14-1 if the grantor of the instrument containing the "open-end" clause has transferred any valuable interest in such property and if the instrument effecting such transfer has been filed for record and actual notice of such transfer has been given to the holder of such instrument. In addition to other means of furnishing actual notice and for the purpose of this subsection, actual notice shall be deemed to have been given to the holder of such instrument upon evidence that a properly stamped envelope which contained a copy of the recorded transfer and was addressed to the holder at its principal office was placed in the United States mail for registered or certified delivery and that the holder or an officer, agent, employee, or representative of the holder acknowledged receipt thereof on a United States Postal Service return receipt form for registered or certified mail delivery.

O.C.G.A. § 44-14-2(b) (Michie 1991 and Supp.1994).

Pursuant to this Georgia Code section, actual notice may be provided by the certified mail procedure as suggested in the statute or "other means." Debtors do not contend that actual notice of the junior lien of The Money Tree was provided to the Bank by the means suggested in section 44-14-2(b). Rather, Debtors contend that the Bank received actual notice of the existence of the junior lien in the form of a notice of insurance coverage to the Bank which showed the existence of a second mortgage. Hence, it is Debtors' burden to show that the Bank received notice in this fashion, and that this notice constitutes "actual notice" as required by the statute. Debtors must also provide the Court with evidence tending to show that some portion of the debt the Bank claims as being secured by the dragnet clause was incurred after actual notice of the second lien was received by the Bank. As stated previously, the only debt which may be subject to the dragnet clause in the deed to secure debt is the credit card debt. Accordingly, the Court will limit its analysis to this debt. Even if the Court were to accept the argument that notice of insurance coverage constitutes "actual notice" within the meaning of section 44-14-2(b), Debtors have nevertheless failed to carry their burden.

The credit card account was created on March 16, 1993. The debt to The Money Store was incurred on May 20, 1993. Debtors have produced no evidence as to when the current credit card balance was incurred or when the Bank may have received the notice of insurance coverage. The only dates provided on the notice of insurance coverage are the policy start and end dates of April 23, 1994, and April 23, 1995. There is no evidence that any debt was incurred after the Bank received notice of insurance coverage. Hence, the Court is unable to determine

what portion of the credit card debt is subject to 44–14–2(b), if any. Because it is Debtors' burden to demonstrate that the debt falls within the scope of section 44–14–2(b), the Court must find that Debtors have failed to carry their burden, and the Bank's secured status is not affected by the junior lien of The Money Tree.

The final assault Debtors make on the Bank's secured status consists of arguments regarding an alleged failure of the Bank to comply with the Truth In Lending Act, 15 U.S.C. § 1601, et seq. Debtors have not filed a counterclaim against the Bank. These arguments appear to be offered to indicate the intent of the parties at the time the subsequent debt was created. If the Court were free to consider the intent of the parties at that time, Debtors' allegations may have some merit. However, as stated above, such intent is irrelevant to the determination of whether the debt is secured by the dragnet clause. *Gilbert*, 130 Ga.App. at 220, 202 S.E.2d at 719; *see also Barksdale v. Peoples Financial Corp. of Alpharetta*, 393 F.Supp. 112 (N.D.Ga.1975), *rev'd on other grounds*, 543 F.2d 568 (5th Cir.1976). Because no party has brought a claim against the Bank under the Truth In Lending Act, the Court makes no findings as to liability in that regard.[3]

In sum, the two notes entered into by Debtors individually after the creation of the dragnet clause were not between the same "parties" within the meaning of Georgia law, and are not secured by the dragnet clause. The joint credit card debt of Debtors is within the scope of the dragnet clause and satisfies the requirements of O.C.G.A. § 44–14–1(b). Therefore, the notes for $2,113.24 and $2,105.69 will be treated as unsecured

debts in this bankruptcy case. The credit card debt for $938.74 will be treated as a secured debt.

An order in accordance with this memorandum opinion will be entered on this date.

### ORDER

The Bank of Upson has filed an Objection to Confirmation of Debtors' Chapter 13 Plan. Debtors have filed an objection to the claim of Bank of Upson. This order is entered in accordance with the memorandum opinion published pursuant to Fed.R.Bankr.P. 7052.

The Bank of Upson has filed Claim Number 1 in the amount of $20,815.32. This claim was filed as a secured claim. This claim appears to be a consolidation of separate liabilities which are discussed in the memorandum opinion, two of which were determined to be unsecured and one of which was determined to be secured. The Claims Register cannot be reconciled to the findings of the memorandum opinion. It is hereby

ORDERED that the objection is OVERRULED; and it is hereby further

ORDERED that all claims of the Bank of Upson are hereby disallowed subject to the right of the Bank of Upson to segregate and refile its various proofs of claim within thirty (30) days of this date in accordance with the memorandum opinion.

SO ORDERED.

---

**3.** Debtors may not have standing to pursue an action against the Bank for a violation of the Truth In Lending Act. *Flournoy v. Trust Co. of Columbus (In re Weaver)*, 632 F.2d 461 (5th Cir. 1980) (truth In Lending Claims belong to the Chapter 13 Trustee as property of the estate.). However, resolution of this standing question is not necessary in this case.