**In re Paul ROBINSON, Brenda Robinson, Debtors.**

**Bankruptcy No. 95–42539.**

United States Bankruptcy Court, E.D. Texas, Sherman Division.

Jan. 5, 1998.

Richard A. Pelley, Sherman, TX, for Debtors.

Sharon H. Sjostrom, Blalock & Williams, P.C., Dallas, TX, for Community Credit Union.

## *OPINION*

DONALD R. SHARP, *Chief Judge.*

NOW before the Court for consideration is Debtors' Objection to the Proof of Claim as filed by Community Credit Union ("CCU") ("Objection") and Debtors' Motion for Sanctions. These matters are related and have been combined for the purposes of this opinion. This opinion constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bank-

ruptcy Procedure 7052 and disposes of all issues before the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 30, 1989, Debtors submitted a MasterCard Credit Card Application ("Application") to CCU. The Application was approved on October 29, 1989, and Debtors were issued a MasterCard. The Application contained no provision for collateral or a security interest in property. Debtors used the MasterCard and continued to make timely payments to CCU.

On June 18, 1991, Debtors purchased a 1991 Ford F150 pickup truck from Middlekauff Ford. Middlekauff arranged the financing of the vehicle through CCU. Debtors financed $16,030.68 of the purchase price of the vehicle.

In purchasing the vehicle, Debtors signed a Retail Installment Sales Contract and Security Agreement ("Security Agreement"). The Creditor's name listed on the Security Agreement was Middlekauff Ford, Inc. The Security Agreement further provided that Debtors ".... agree that all collateral which is given to secure this loan (the vehicle), also secures all other obligations of yours with CU." (the "cross-collateralization clause."). CCU was noted as first lienholder on the Certificate of Title and Middlekauff Ford was listed as the previous owner.

On November 15, 1995, Debtors filed their Chapter 7 case. As of that date, Debtors owed CCU a total of $6,104.98 ($3,273.39 on the vehicle, $2,469.09 on the MasterCard, and $362.50 for attorneys fees). On December 20, 1995, CCU filed a secured claim in the amount of $6,028.15 attaching the Security Agreement, Certificate of Title, and Master-Card Application as exhibits thereto.

Debtors intended to reaffirm the debt on the vehicle. Accordingly, on December 27, 1995, Debtors forwarded to CCU a Reaffirmation Agreement incorporating the Security Agreement and Certificate of Title.

Upon receiving CCU's proof of claim, Debtors questioned the amount of the secured debt. Subsequently, on January 9, 1996, Brenda Robinson made inquiries about CCU's claim. Specifically, Ms. Robinson called CCU to determine the amount of the claim. During the course of that inquiry, Ms. Robinson was informed by Ursula Stephens, Senior Collection Officer, that the MasterCard account was cross-collateralized by the vehicle. Ms. Stephens further informed Ms. Robinson that due to the cross-collateralization clause CCU could repossess the vehicle post-bankruptcy to satisfy the MasterCard debt upon default. According to Ms. Stephens, CCU would require reaffirmation of both the vehicle and MasterCard debts.

Ms. Robinson apparently suffers from a history of emotional problems including depression for which she receives medical treatment. Ms. Robinson was quite distraught after her conversation with Ms. Stephens.

Debtors subsequently rescinded the Reaffirmation Agreement, as they had no desire to reaffirm the MasterCard Debt.

Debtors later filed the present objection and motion for Sanctions.

## DISCUSSION OF LAW

### I. Objection

CCU has filed a fully secured proof of claim in the amount of $6,028.15. CCU has sufficiently proved up the amount of their claim. However, Debtors question the validity of the cross-collateralization clause. Consequently, Debtors dispute the secured status of CCU's claim. Debtors assert the claim can only be secured in the amount of $3,271.12, the payoff amount on the vehicle as of January 9, 1996. The remainder of the claim should be unsecured, according to Debtors.

### A. Procedural Posture

CCU maintains that Debtors may not challenge the validity of a lien through a claims objection, but must initiate an adversary proceeding under Rule 7001.

Rule 3007 states: "If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." Rule 7001(2) pro-

vides that a proceeding to determine the validity, priority, or extent of a lien or other interest in property is an adversary proceeding governed by the rules of Part VII of the Federal Rules of Bankruptcy Procedure.

Debtors, through their Objection, are clearly challenging the validity or extent of CCU's lien. They argue that the vehicle secures only the vehicle note, and does not secure the MasterCard debt. Debtors are clearly asking for relief of the kind specified in Rule 7001.

Consequently, CCU maintains that Debtors must file a separate adversary proceeding to challenge the validity or extent of CCU's lien. CCU further asserts that the Court cannot properly consider Debtors' challenge of the cross-collateralization clause raised by the Objection.

However, there appears to be a diversity of interpretation of Rule 3007. CCU cites *In re Lawler* and *In re Felker* in support of its position.

The court in *Lawler* believed that Rule 3007 does not automatically convert a contested matter to an adversary proceeding, relying primarily on Collier's interpretation of the rule and noting that adversary proceedings are more complex than contested matters. *In re Lawler*, 106 B.R. 943, 957 (N.D.Tex.1989).

The court in *Felker* stated that objections to proofs of claim which seek to dispute the "validity, priority, or extent of a lien or other interest in property" should be brought as adversary proceedings rather than via motion practice. *In re Felker*, 181 B.R. 1017, 1020 (Bankr.M.D.Ga.1995). However, the *Felker* court held that failure to bring such an action as an adversary proceeding was not a jurisdictional defect, and could be waived. *Id.* The court further held that where the rights of the parties have been adequately presented no prejudice results from consideration of the issues on the merits. *Id.*

In the case *sub judice*, the parties have competently presented and briefed their positions. The Court believes the parties suffer no prejudice from consideration of the merits raised in the Objection.

Moreover, this Court does not interpret Rule 3007 as requiring Debtors to file a separate adversary proceeding. The Rule states: "If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it **becomes** an adversary proceeding." The plain meaning of the word "becomes" appears to indicate that it happens automatically, without the need of further action by Debtors.

This interpretation appears to be supported by *In re Mathiason* and the cases cited therein. In that case, the Eighth Circuit held that if an objection is joined with a demand for relief of the kind specified in Rule 7001, the litigation becomes an adversary proceeding under Rule 3007. The Debtor need not commence a separate adversary proceeding. *In re Mathiason*, 16 F.3d 234, 238 (8th Cir.1994).

Therefore, although Debtors seek relief of the kind specified in Rule 7001, the Court is not precluded from considering the merits of the issues raised in the objection.

**B. Cross-collateralization**

The thrust of Debtors' objection is a challenge to the validity or extent of CCU's lien on the vehicle. Debtors maintain that the cross-collateralization clause is invalid. Consequently, Debtors assert that only the vehicle debt is secured, and the MasterCard debt is unsecured.

The cross-collateralization clause provides that "all collateral which is given to secure this loan, also secures all other obligations of yours with CCU."

Numerous courts have upheld the validity of c ross-collateralization clauses. See *In re Felker*, 181 B.R. 1017 (Bankr.M.D.Ga.1995); *In re Comprehensive Review Technology*, 138 B.R. 195 (Bankr.S.D.Ohio 1992); *In re Wetzel*, 134 B.R. 718 (Bankr.W.D.N.Y.1992); *In re Bates*, 35 B.R. 475 (Bankr.M.D.Tenn. 1983); *In re Phillips*, 161 B.R. 824 (Bankr. W.D.Mo.1993); and *Rocket City Federal Credit Union v. Kennemer*, 143 B.R. 275 (N.D.Ala.1992). While courts have allowed such clauses, courts have been cautious in enforcing them. *In re Phillips*, 161 B.R. 824 (Bankr.W.D.Mo.1993).

Likewise, Texas law has recognized the validity of cross-collateralization clauses; relevant Texas statutes provide:

(a) .... a security agreement may provide that any or all obligations covered by the security agreement are to be secured by after-acquired collateral.

(c) Obligations covered by a security agreement may include future advances or other value....

Tex.Bus. & Com.Code Ann. § 9.204 (Tex. UCC) (Vernon 1991)

Subsection (a) serves to validate the so called "cross-security" clause under which collateral acquired at any time may secure advances whenever made. Tex.Bus. & Com. Code Ann. § 9.204 comment 3 (Tex.UCC) (Vernon 1991).

Under subsection (c) collateral may secure future as well as present advances when the security agreement so provides. Tex.Bus. & Com.Code Ann. § 9.204 comment 5 (Tex. UCC) (Vernon 1991).

■ Under Texas law, cross-collateralization provisions apply only to indebtedness which was reasonably within the contemplation of the parties to the security instrument at the time it was made. *Moss v.. Hipp,* 387 S.W.2d 656, 658 (Tex.1965); *Republic Nat. Bank of Dallas v. Zesmer,* 187 S.W.2d 227, 229 (Tex.Civ.App.—Dallas 1945). Debtors argue that they did not intend for the MasterCard debt to be secured by the vehicle, therefore, the cross-collateralization clause is invalid as to the MasterCard debt.

■ The language of the contract, unless ambiguous, represents the intention of the parties. The intent deduced from this objective matter, not the parties' subjective understandings, is controlling. *Kimbell Foods, Inc. v. Republic Nat. Bank,* 557 F.2d 491, 496 (5th Cir.1977). The Fifth Circuit also held, that the subsequent indebtedness must arise directly out of the transactions between the parties to the mortgage ... a future advance clause in a mortgage does not secure a subsequent debt from the debtor to a third party acquired from that third party by the original mortgagee.

■ In the case *sub judice,* there are actually two documents that must be considered. The credit card agreement clearly does not contemplate any security for the credit card debt. Therefore, it is not a document that grants a security interest in after acquired collateral nor are we dealing with any document that grants a security interest in specific collateral to secure future advances. To the extent that one attempts to discern the intent of the parties by reference to these two documents, there is an ambiguity. This Court cannot find any clear intent by the parties to secure the credit card with any collateral at all, and to the extent that one might argue that the retail installment contract evidences a clear intent to secure future advances with the vehicle described in that contract, that argument is meaningless in this case. The question is whether or not there is a clear intent evidenced by the parties to secure an existing debt with the granting of new collateral.

Debtors rely heavily on the results reached in the *Moss* and *Zesmer* cases to support their contention that the cross-collateralization clause is invalid. In *Moss,* Falls borrowed $3,500.00 from Hipp and used the same for a down payment on a tractor. Later, Falls borrowed the remainder of the purchase price of the tractor from American National Bank and executed to the bank his note for $5,471.28 secured by a chattel mortgage on the tractor. The chattel mortgage contained a "dragnet" or "cross-collateralization" clause. Payment of the note was guaranteed by Hipp. Falls defaulted under the note and Hipp paid the entire balance of the note to the bank and took an assignment of the note and chattel mortgage. The court held that the mere acquisition by Hipp of the note secured by the chattel mortgage did not give him a lien on the tractor to secure the original loan. *Moss,* 387 S.W.2d at 657–658.

Similarly, in *Zesmer,* Ackerman executed three promissory notes and three chattel mortgages on three separate vehicles in favor of Liberty State Bank. Each note contained a "dragnet" or "cross-collateralization" clause. Subsequently, Ackerman obtained an unsecured loan and executed a promissory note in favor of Republic National Bank.

Ackerman later died. After his death, Republic National Bank obtained an assignment of the three notes and chattel mortgages from Liberty State Bank. The court held it clearly was not within the contemplation of the deceased and the Liberty State Bank that the mortgages given to secure its indebtedness should also be security for the debt subsequently made and owing by deceased to the Republic National Bank.

These cases hold that an agreement or contract between two parties cannot grant a security interest in the collateral to a third party pursuant to a "dragnet" or "cross-collateralization" clause, because such debt clearly cannot be within the reasonable contemplation of the original parties at the time of execution of the original agreement or contract. The same situation exists in the case presented to this Court. The Retail Installment Contract and Security Agreement clearly lists Middlekauff Ford, Inc. as the creditor. The security interest in the vehicle was subsequently transferred to Community Credit Union. Thus, the vehicle and Mastercard debts were not between the same parties.

Former bankruptcy judge, Bill Brister, discussed cross-collateralization clauses in the context of a future advances clause in a deed of trust in the case of *In re Stone,* 49 B.R. 25 (Bankr.N.D.Tex.1985). In that case, Judge Brister summarized the controlling jurisprudence in our Circuit as enunciated by the Fifth Circuit in the *Kimbell Foods* case (cited earlier) when he stated:

> "The subsequent indebtedness must arise directly out of transactions between the parties to the mortgage ... A future advance clause in a mortgage does not secure a subsequent debt from the debtor to a third party acquired from that third party by the original mortgagee. Further, the language of the contract must clearly and unambiguously reflect the intention of the parties to cover subsequent advances. Finally, the subsequent indebtedness must be of the same class or character of the first indebtedness."

This Court believes that an attempt to pledge after acquired collateral to secure a preexisting debt, as is the case here, is governed by those same general principles. The attempt by Community Credit Union to secure the credit card debt with the automobile failed on all counts. It is not an indebtedness that arises directly out of transactions between the same parties; it is an attempt to acquire collateral to secure an existing debt by acquiring a security interest from a third party; and reading the language of the two contracts together there is no clear and unambiguous intent of the parties to offer the vehicle as security for the credit card indebtedness. Based on these facts the amount of the secured claim should be the payoff amount of the vehicle. It is therefore

ORDERED that the Objection is hereby SUSTAINED.

## II. Motion for Sanctions

Debtors allege that CCU and Ursula Stephens willfully and maliciously attempted to harass Debtors and violated the automatic stay under § 362. Debtors seek sanctions in the amount of $20,000.00 plus attorneys fees.

This alleged misconduct apparently arose from Ms. Robinson's January 9, 1996, phone call to CCU and resulting conversation with Ms. Stephens wherein Ms. Stephens informed Ms. Robinson that the MasterCard debt was cross-collateralized by the vehicle.

Debtors have failed to prove any misconduct on the part of either CCU or Ms. Stephens. Ms. Robinson, Debtor, initiated the contact with CCU by placing the phone call. Ms. Stephens was simply informing Ms. Robinson of the nature of CCU's claim, per Ms. Robinson's request. CCU has made no attempt to repossess the vehicle, initiate litigation against Debtors, or make any threats or harassing phone calls. It is therefore

ORDERED that the Motion for Sanctions is hereby DENIED.