**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 14, 2013**

# In the Court of Appeals of Georgia

A13A1035. SHEPHERD v. GREER, KLOSIC & DAUGHERTY.

MCMILLIAN, Judge.

Appellant Kathleen Ann Shepherd appeals from the trial court's order denying her motion for partial summary judgment and granting partial judgment to the law firm of Greer, Klosic & Daugherty ("GKD") on its suit to enforce an attorney's lien. As more fully set forth below, we now reverse.

After a bus hit the car she was operating, Shepherd retained GKD to represent her in pursuing personal injury claims against the Metropolitan Atlanta Rapid Transit Authority ("MARTA"). Shepherd signed an "Attorney-Client" contingency fee contract ("Contract"), which included a provision setting out the compensation GKD was entitled to receive from Shepherd in the event she terminated the firm's employment prior to recovery on her claims. Prior to settling, Shepherd, in fact,

terminated GKD's representation, and GKD filed an attorney's lien pursuant to OCGA § 15-19-14.

Shepherd subsequently reached a settlement with MARTA, and GKD sent Shepherd a demand for payment. Shepherd, however, refused to pay the amounts included within the lien that were allegedly attributable to time spent by a GKD paralegal working on her case, asserting that the termination provision only required her to pay for the time spent by John Daugherty, the GKD attorney working on her case. GKD then filed a petition to enforce its lien in the approximate amount of $54,000, which included over $37,851 in attorney fees, $13,512 in paralegal fees at the rate of $125 an hour and $2,658 in expenses. In response to GKD's motion for partial summary judgment, Shepherd maintained her position that the amount sought for paralegal fees should be excluded from the lien.

The trial court, citing *Missouri v. Jenkins*, 491 U. S. 274 (109 SCt 2463, 105 LE2d 229) (1989), found that the "Contract unambiguously includes the time that [GKD's] paralegal spent performing work traditionally done by an attorney [(hereinafter referred to as "professional services")] at the rate of $125.00 per hour" and, after deducting a duplicate entry and subtracting the charges for the time the

paralegal spent working on non-professional services, ordered Shepherd to pay $50,459.31 to GKD. Shepherd then filed the present appeal.

The sole issue on appeal is whether the termination provision of the Contract requires Shepherd to pay GKD for services performed by a GKD paralegal. Because our review is at the summary judgment stage and the interpretation of a contract, including the existence or nonexistence of any ambiguities in the contract, usually involves a question of law for the court to resolve, our review is de novo. *Freund v. Warren*, 320 Ga. App. 765, 768 (740 SE2d 727) (2013). *Reynolds Properties, Inc. v. Bickelmann*, 300 Ga. App. 484, 487 (685 SE2d 450) (2009).

The overarching principle that guides our construction of the Contract is to effectuate the intent of the parties as set out in the language of the agreement. *Homelife Communities Group v. Rosebud Park, LLC*, 280 Ga. App. 120, 122 (633 SE2d 423) (2006). Moreover,

> [I]f that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction. Further, the construction which will uphold a contract in whole and in every part is to preferred, and the whole contract should be looked to in arriving at the construction of any part. Moreover, no construction is required or even permitted when the language employed by the parties in the

3

contract is plain, unambiguous, and capable of only one reasonable interpretation. . . .

(Citation omitted.) Id. See also *Freund v. Warren*, 320 Ga. App. at 768-769; *White v. Kaminsky*, 271 Ga. App. 719, 721 (610 SE2d 542) (2004). In determining whether the contract language is "plain, unambiguous, and capable of one reasonable interpretation," we have defined ambiguity to mean "duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and it also signifies being open to various interpretation." (Punctuation omitted.) *McGuire Holdings, LLLP v. TSQ Partners, LLC*, 290 Ga. App. 595, 602 (2) (b) (660 SE2d 397) (2008). *Freund*, 320 Ga. App. at 769. In other words, "[a] word or phrase is ambiguous when its meaning is uncertain and it may be fairly understood in more ways than one." Id. at 769, n. 4.

Accordingly, we turn first to the relevant terms of the Contract, which provide:

In the event there has been no settlement, verdict or judgment prior to the termination of attorneys, client(s) agree(s) to pay attorneys the sum of two-hundred-seventy-five ($275.00) dollars per hour for services rendered, or the percentage of the last highest offer for compromise or

4

settlement by the responsible party, or the insurance indemnity carrier of the responsible party, whichever, when calculated, is higher.[1]

Shepherd contends that the $275 per hour for services rendered refers only to the services provided by her attorney, consistent with what her attorney explained to her would be paid upon termination of the Contract prior to settlement. GKD, on the other hand, asserts that "attorneys" as defined in the Contract refers to the firm as a whole, and that "services rendered," which is not defined, includes all professional services rendered by the firm. GKD further contends that it should not be penalized for voluntarily charging less than $275 per hour for paralegal services.

As more fully explained below, we find that an ambiguity exists concerning the services that were compensable under the termination provision of the Contract. Although GKD argues correctly that the first paragraph of the Contract appears to use the term "attorneys" to refer to the law firm of GKD and not an individual attorney or attorneys, we do not agree that this means that the term attorneys unambiguously encompasses all GKD employees, at least to the extent they are rendering professional services. In fact, the term attorneys is used throughout the Contract, and

---

[1] For ease of reference, this provision will be referred to as the "termination provision."

many of these other instances clearly pertain to legal work that could only be performed by a licensed member of the bar.[2] Further, although the term "services" is not specifically limited in the Contract to professional services performed by an attorney, we agree with Shepherd that the insertion of a specific dollar amount for those services that corresponds with the rate Daugherty charged at that time for his services calls into question whether the parties intended for "services rendered" to be limited to those performed by the attorney or whether they intended that term to be more broadly applied to include the work performed by paralegals on her case. Accordingly, we find that the term "services," as used in the termination provision, is uncertain and open to more than one meaning.

Moreover, unlike GKD, we do not believe that the United States Supreme Court's holding in *Jenkins* and *Richlin Security Svc. Co. v. Chertoff*, 553 U.S. 571 (128 SCt 2007, 170 LE2d 960) (2008), which involved issues of federal statutory interpretation, should be engrafted onto this Attorney-Client contingent fee contract in the absence of any indication that the parties intended to use the federal definitions

_____

[2] Among other references, the Contract provides the "attorneys" will decide whether to prosecute the claim, the "attorneys" have the option and discretion to use outside counsel, the "attorneys" may hire investigators to assist them, and, pertinently, the attorneys may file an attorneys fee lien.

in the Contract. See *Jenkins,* 491 U.S. at 285 (recovery of paralegal fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 USC § 1988); *Richlin*, 553 U.S. at 573 (in which the court decided a similar issue under the Equal Access to Justice Act, 5 USC § 504 (a) (l) (2006 ed.) and 28 USC § 2412 (d) (1) (A) (2000 ed.)).

Although we conclude that the termination provision of the Contract is ambiguous concerning whether it obligates Shepherd to pay paralegal fees, e.g., *McGuire Holdings,* 290 Ga. App. at 602 (2) (b), that does not necessarily mean that a jury must resolve this issue. Rather, it is only when the ambiguity remains after applying the rules of construction that a jury must resolve the issue of what the ambiguous language means. *White v. Kaminsky*, 271 Ga. App. 719, 721 (610 SE2d 542) (2004). Accordingly,

> [w]here an ambiguity exists, . . . we resolve that ambiguity by applying the statutory rules of construction to ascertain the intent of the parties. *Garrett v. Southern Health Corp. of Ellijay*, 320 Ga. App. 176, 182 (1) (739 SE2d 661) (2013); OCGA § 13-2-2. Those rules require us to interpret any isolated clauses and provisions of the contract in the context of the agreement as a whole, *Jones v. Destiny Indus.*, 226 Ga. App. 6, (2) (485 SE2d 225) (1997); to construe any ambiguities most strongly against the party who drafted the agreement, *Hertz Equip. Rental Corp. v. Evans*, 260 Ga. 532 (397 SE2d 692) (1990); and to give the contract a "reasonable construction that will uphold the agreement

7

rather than a construction that will render the agreement meaningless and ineffective." (Citation omitted.) *McLendon v. Priest*, 259 Ga. 59, 60 (376 SE2d 679) (1989).

*Willesen d/b/a 2W Communications v. Ernest Communications, Inc.*, ___ Ga. App. ___ (1) (746 SE2d 755) (2013). Moreover, "[w]hile '(p)arol evidence is inadmissible to add to, take from, or vary a written contract,' we may consider the parol evidence presented by the parties in light of [any] unresolved ambiguity. OCGA § 13-2-2 (1)." *Krogh v. Pargar, LLC*, 277 Ga. App. 35, 39 (2) (625 SE2d 435) (2005). See also *Unifund Financial Corp. v. Donaghue*, 288 Ga. App. 81 (653 SE2d 513) (2007); *Holcim (US), Inc. v. AMDG, Inc.,* 265 Ga. App. 818 (596 SE2d 197) (2004).

In this case, and even after construing the Contract against GKD as the maker, we find it necessary to turn to the parol evidence to ascertain the parties' intent. *Krogh*, 277 Ga. App. at 39-40. In her verified interrogatory responses, Shepherd said that at the time she signed the Contract, Daugherty explained to her that in the event the Contract was terminated, he would charge her $275 an hour for the time he spent working on the case and that at no point during the conversation did he inform her that he would also be charging $125, or any other amount, for the work performed by his support staff. On appeal, GKD argues that it would be improper to consider this

8

evidence to vary or contradict the terms of an unambiguous contract, but offers no argument and no citation to the record to dispute that this conversation occurred or that Daugherty made this statement to Shepherd. But we have concluded that the Contract, particularly the termination provision, is ambiguous and thus, our inquiry could have ended here – with a finding that the unrebutted parol evidence showed that the parties intended for only Daugherty's fees to be paid upon termination of the Contract.

However, although we are not required to cull the record or make arguments on behalf of a party, we nevertheless have exercised our discretion and reviewed the portions of the record which appear to be relevant to this issue. *Cox v. Southern Guar. Ins. Co.*, 254 Ga. App. 776, 778 (2) (563 SE2d 882) (2002). That review has revealed that GKD did in fact file an affidavit in response to Shepherd's motion for summary judgment in which Daugherty averred that Shepherd and he "never discussed her terminating [him] if hired and if that was a concern I would have told her to hire another attorney." Although this statement does not directly contradict all of Shepherd's statement concerning what was said to her at this meeting about this issue, it does appear to contradict her assertion that they specifically discussed what she would be required to pay if she terminated Daugherty. Thus, the ambiguity in the

9

Contract cannot be resolved by applying the rules of contract construction, and a jury must resolve the issue of what the ambiguous language means and what the parties intended. *White v. Kaminsky*, 271 Ga. App. at 721. Accordingly, the trial court's order is reversed and the case remanded for trial.

However, in so holding, we emphasize that this opinion is limited to the particular contract and peculiar circumstances presented in this case, and we would stress that all agreements, including those between an attorney and client, should be drafted with an eye toward avoiding latent and patent ambiguities such as those present here.

*Judgment reversed. Andrews, P. J., and Dillard, J., concur.*