**WHOLE COURT**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 13, 2015**

# In the Court of Appeals of Georgia

A15A0486. CLARK v. AGGEORGIA FARM CREDIT ACA.

McMILLIAN, Judge.

Appellant Donald Clark ("Donald") filed a complaint, as amended and recast several times, against appellee AgGeorgia Farm Credit ACA ("AgGeorgia")[1] seeking damages arising from the alleged breach of certain deeds to secure debt and the wrongful foreclosure of a 278 acre farm in Wilcox County, Georgia (the "Farm") that Donald jointly owned[2] with his brother Harris Edwin Clark ("Edwin"; collectively referred to as "the Brothers"). The trial court granted partial summary judgment to

---

[1] As the name implies, AgGeorgia makes loans for agricultural purposes.

[2] The Brothers each owned a one half undivided interest in the Farm.

AgGeorgia, and Donald timely filed an appeal to this Court.[3] Having carefully considered the issues raised in this appeal, we now reverse.

The underlying facts are essentially undisputed. The Brothers jointly purchased the Farm sometime during the 1980's and operated the Farm together for many years. In 1997, the Brothers obtained individual loans from AgGeorgia's predecessor, at which time they jointly executed two deeds to secure debt pledging the Farm as security for the loans (collectively referred to as the "1997 Deeds").

According to AgGeorgia, the 1997 Deeds were set to expire on December 1, 2004, and in October 2004, the Brothers jointly executed two new security deeds (DSD No. 1 and DSD No. 2; collectively referred to as the "2004 Deeds") pledging the Farm to secure certain identified existing loans, which AgGeorgia had individually extended to the Brothers. More specifically, DSD No. 1 identified an existing loan to Donald, who was named as the sole "Borrower" under that deed, and DSD No. 2 identified an existing loan to Edwin, who was listed as the sole "Borrower" in DSD No. 2. Donald and Edwin, who were defined as the "Undersigned, whether one or more," jointly executed the 2004 Deeds. The 2004

---

[3] Donald also moved for partial summary judgment, and the trial court denied his motion in the same order.

Deeds were in many respects identical to the 1997 Deeds[4] and contained many of the same terms and conditions, including "open end" and "dragnet" clauses, which made additional loans, advances, and other indebtedness subject to the 2004 Deeds under certain conditions.

Edwin paid off the debt identified in DSD No. 2 in January 2005, and Donald paid off the debt identified in DSD No. 1 in February 2005. In the summer of 2004, the Brothers had a disagreement over a matter unrelated to their farming operations, and in the ensuing months their relationship deteriorated to the point that they ceased farming together shortly after the notes were paid off. However, the Brothers continued to farm separately, and in April 2005 Donald obtained another loan from AgGeorgia, which was evidenced by a promissory note in favor of AgGeorgia for $80,000. In 2007, Donald obtained two additional loans and executed two additional promissory notes in favor of AgGeorgia.[5]

In 2008, AgGeorgia notified Donald that he was in default on his Subsequent Loans and warned him that it intended to initiate a foreclosure action if he did not

---

[4] The 1997 Deeds and 2004 Deeds will be collectively referred to as "the Deeds."

[5] The April 2005 and 2007 loans will be referred to as "Donald's Subsequent Loans."

satisfactorily restructure the loans. Donald failed to cure the default or otherwise restructure the loans, and in April 2009, AgGeorgia notified Edwin and Donald that Donald was in default on his Subsequent Loans as well as an additional note he executed in March 5, 2004,[6] and that it intended to initiate judicial foreclosure proceedings under the terms of DSD No. 1 if Donald did not satisfy the outstanding debt, which at that time was slightly over $193,000 including interest and fees, within ten days. Although Edwin apparently did not have any outstanding loans to AgGeorgia at that time, after he was notified of the pending foreclosure he requested and received a $190,000 loan from AgGeorgia, which was evidenced by a promissory note he signed on April 9, 2009 (hereinafter referred to as "Edwin's Subsequent Loan"). AgGeorgia did not provide notice to Donald of Edwin's Subsequent Loan, nor did it attempt to obtain Donald's written consent prior to extending the loan.

After providing additional notice of default and advertising the sale, AgGeorgia foreclosed on the 2004 Deeds in August 2009, at which time Donald's outstanding debt amounted to approximately $198,748.70 and Edwin's outstanding debt amounted to $191,838.21. Edwin entered the highest bid at the foreclosure sale,

---

[6] The purpose of the March 4, 2004 loan was to finance Donald's share of the purchase price of an irrigation pivot he had purchased with Edwin, and AgGeorgia was granted a security interest in the pivot to secure the loan.

purchasing the Farm for $392,480. Donald was present at the foreclosure sale but did not object or challenge the sale at that time.

Over three years after the foreclosure sale, Donald instituted the present proceedings, contending, among other things, that AgGeorgia improperly exercised the power of sale in the 2004 Deeds because DSD No. 1 did not secure his previous indebtedness other than indebtedness specifically identified in the deed, and neither his nor Edwin's subsequent indebtedness was secured by the 2004 Deeds because AgGeorgia did not obtain the consent of the "non-borrowing" brother to the other brother's loans. Further, Donald also challenged the foreclosure on the basis that AgGeorgia was not the holder of either the notes or the 2004 Deeds at the time it instituted the foreclosure proceedings.[7] Both parties filed motions for partial summary judgment, and following a hearing, the trial court entered a written order denying Donald's motion for partial summary judgment and granting partial summary judgment to AgGeorgia on Donald's claims for breach of contract and wrongful foreclosure. We agree with Donald that the trial court erred by granting summary

[7] Pursuant to a General Financing Agreement, AgGeorgia assigned the notes and deeds to AgFirst Farm Credit Bank ("AgFirst"), which provided funding for AgGeorgia's loans through a line of credit.

5

judgment to AgGeorgia and denying Donald's motion on these claims and accordingly reverse.

1. The 2004 Deeds contain three sections that set out the indebtedness secured by the deeds. Section One of each deed identifies a specific pre-existing individual note for a specific loan made to each brother for which the Farm was pledged as security; Section Two addresses only subsequent "additional" loans made to the "Borrower" that are evidenced by a note or notes; and Section Three applies to both pre-existing indebtedness as well as indebtedness that may be "contracted" after the execution of the Deeds. As stated above, the specifically identified indebtedness of each brother specified in Section One has been satisfied, and thus is not at issue here. However, we must determine whether the Brothers' Subsequent Loans were secured under Section Two, and whether Donald's March 2004 loan was secured under Section Three.

"Under Georgia law, a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies." *Stewart v. Suntrust Mtg., Inc.*, ___ Ga. App.___ (3) (Case No. A14A2047, decided March 27, 2015). And [t]he construction of an unambiguous deed, like the construction of any other contract, is a question for determination by

6

the court." *Turk v. Jeffreys-McElrath Mfg. Co.*, 207 Ga. 73, 76 (2) (60 SE2d 166) (1950). Under Georgia law, the cardinal rule of contract construction is to ascertain the intention of the parties, as set out in the language of the contract. *Shepherd v. Greer, Klosic & Daugherty*, 325 Ga. App. 188, 189-190 (750 SE2d 463) (2013) (the overarching consideration "is to effectuate the intent of the parties as set out in the language of the agreement").

> [I]f that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction. Further, the construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part. Moreover, no construction is required or even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.

(Citations and punctuation omitted.) Id. at 190.

(a) *Section Two and Subsequent Loans.* Under Section Two ("open end clause") of the Deeds, the Farm was pledged to secure not only the loans specifically identified in the Deeds, but also

> (2) all additional loans and advances that may subsequently be made to Borrower (or to any one or more of the parties designated as

7

Undersigned or Borrower, with the written consent of the remainder of said Undersigned or Borrower), by Lender, which will be evidenced by a note or notes . . ."

As set out above, Section Two consists of two parts – a parenthetical and language outside the parenthetical. According to the language outside the parenthetical, the property pledged in the deeds acts as security under the following circumstances: 1) all subsequent loans, 2) evidenced by a note or notes, and 3) made to the "Borrower." However, in situations where the language inside the parenthetical applies, an additional requirement – written consent by the "remainder" of the Undersigned or Borrower – is clearly imposed as a condition for the deed to secure a subsequent debt. Thus, we cannot simply ignore the language inside the parenthetical because clearly that language applies in some circumstances. The key question then is under what circumstances does the consent requirement apply.

We first examine whether this question can be answered solely by reference to the language of the 2004 Deeds. AgGeorgia seizes on the fact that the parenthetical refers to "parties," in the plural rather than "party" in the singular, and urges that consent is only required when 1) there are multiple "parties" who have been identified as Borrower, or 2) when there are multiple parties identified as Undersigned and none

8

of them is also the sole identified Borrower. Thus, AgGeorgia argues that Section Two comes into play in only two circumstances – where an additional loan is made to a Borrower, *and* there are multiple persons designated as Borrower, *or* when an additional loan is made to an Undersigned, and there are multiple persons designated as Undersigned and the Undersigned who receives the additional loan is not also the sole borrower. But AgGeorgia's reading of Section Two on the one hand appears to ignore that the phrase "or to any one or more" immediately precedes the word "parties," and on the other hand appears to read into the clause conditions that do not appear in the parenthetical.

Donald argues that the proper meaning of Section Two is best understood by inserting the proper names of the parties into the deeds. For example, according to Donald, DSD No. 1 secured all subsequent loans "made to [Donald] (or to any one or more of the parties designated as [Edwin and Donald] or [Donald] with the written consent of the remainder of said [Edwin and Donald] or [Donald])." Thus, Donald argues, under this interpretation, the consent of the non-borrowing brother was required.

Although both of these interpretations are strained and appear to read language into or out of the parenthetical in order to reach their interpretation, we cannot say

that either interpretation is unreasonable. Further, any interpretation we place on the section would suffer from the same defects. "[W]e have defined ambiguity to mean 'duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and it also signifies being open to various interpretations." (Citation and punctuation omitted.) *Shepherd,* 325 Ga. App. at 190. *Horwitz v. Weil*, 275 Ga. 467, 468 (569 SE2d 515) (2002) ("Ambiguity in a contract is defined as duplicity, indistinctness or an uncertainty of meaning or expression."). In other words, "[a] word or phrase is ambiguous when its meaning is uncertain and it may be fairly understood in more ways than one." *Freund v. Warren*, 320 Ga. App. 765, 769, n.4 (740 SE2d 727) (2013). Accordingly, we conclude that Section Two is ambiguous to the extent that it fails to specify when consent to subsequent loans is required as a condition precedent to a subsequent debt being secured by the deed.

Because Section Two is ambiguous, we must now attempt to resolve that ambiguity by applying the statutory rules of construction to ascertain the intent of the parties. See OCGA § 13-3-2. "If a term used in a contract is of uncertain meaning and may be fairly understood in more ways than one, it is ambiguous, and we apply the rules of contract construction in an effort to resolve the ambiguity. The proper construction of a contract is a question of law for a court to determine." (Citations and

10

punctuation omitted.) *Garrett v. Southern Health Corp. of Ellijay, Inc.*, 320 Ga. App. 176, 182 (1) (739 SE2d 661) (2013). Thus, "it is only when the ambiguity remains after applying the rules of construction that a jury must resolve the issue of what the ambiguous language means." *Shepherd*, 325 Ga. App. at 192.

One primary rule of statutory construction requires us to construe any ambiguity most strongly against the party who drafted the agreement. *Hertz Equip. Rental Corp. v. Evans*, 260 Ga. 532 (397 SE2d 692) (1990); See also *Willesen v. Ernest Communications, Inc.,* 323 Ga. App. 457, 460 (1) (746 SE2d 755) (2013). It is undisputed in this case that AgGeorgia drafted the 2004 Deeds, and thus as an initial matter the Deeds must be construed against AgGeorgia.

Further, if a party intends to contract away a substantial right, such as having future encumbrances placed on their property interests without their knowledge or consent, such must plainly appear from the contract. *Covington v. Brewer*, 101 Ga. App. 724, 729 (3) (115 SE2d 368) (1960) ("since contracts must be construed according to the intention of the parties at the time of their execution it will not be presumed that parties intend to contract away their legal rights in regard to a subject matter not clearly appearing therein"). Additionally, "[t]he laws which exist at the time and place of the making of a contract, enter into and form a part of it; and the

11

parties must be presumed to have contracted with reference to such laws and their effect on the subject matter." (Citations and punctuation omitted.) *Magnetic Resonance Plus, Inc. v. Imaging Systems Intl.*, 273 Ga. 525, 527 (2) (543 SE2d 32) (2001).

Pursuant to OCGA § 44-14-1 (b), "open-end" or "dragnet" clauses contained in mortgages or deeds conveying realty to secure a debt have been limited to "debts or obligations arising ex contractu, . . . *between the original parties to the security instrument*." (Emphasis supplied.) Thus, "[u]nless the security instrument clearly contemplates joint and several liability, all of the grantors to the security instrument containing the open-ended clause must be parties to the separate indebtedness, though not all of the parties to the separate indebtedness must be parties to the security instrument." (Footnotes omitted.) Frank S. Alexander, *Georgia Real Estate Finance and Foreclosure Law,* p. 37, § 2-3 (2014-2015 ed.). See also *Hill v. Perkins*, 218 Ga. 354 (127 SE2d 909) (1962); *Cordele Banking Co. v. Powers*, 217 Ga. 616, 619 (1) & (2) (124 SE2d 275) (1962) (the individual indebtedness of one of the grantors is not the debt of both of grantors and does not fall within the open-end clause of the security deed); *In re Felker*, 181 Bankr. 1017 (Bankr. M.D. Ga. 1995); *Americus Finance Co. v. Wilson*, 189 Ga. 635 (1) (7 SE2d 259) (1940); cf. *Sutton v. Atlantic*

12

*Bank & Trust Co.*, 167 Ga. App. 861, 863 (307 SE2d 746) (1983) (subsequent debts were deemed secured where it was clear that the grantors included either the singular or the plural grantors and that it was uncontradicted that all the parties to the deed intended that the debts of one borrower would be secured by deed). As our Supreme Court has explained, "it is obvious that an additional debt of one creditor cannot operate as a hook to grab a dragnet which carries with it the property interests of a party other than the creditor in the separate transaction." *Willis v. Rabun County Bank*, 249 Ga. 493, 494 (291 SE2d 715) (1982).

In this case, the 2004 Security Deeds were expressly "made . . . between H. Edwin Clark and Donald L. Clark," as "Undersigned, . . . and AgGeorgia." Both Edwin and Donald are the Grantors under the 2004 Deeds and they, along with AgGeorgia, as the Grantee, are the original parties to the deeds. The consent requirement, as asserted by Donald, is thus wholly consistent with existing law in that without the express consent of the non-borrowing brother, the property would not be automatically pledged to secure the debt of the borrowing brother.[8]

---

[8] If AgGeorgia wanted to avoid the limitation without obtaining the express consent of the other brother, it could have included language in the deed specifically referencing OCGA § 44-14-1 and plainly and unambiguously provided that the non-borrowing brother consented to his share of the realty acting as security for the other brother's future loans.

Additionally,"[t]he parties' interpretation is entitled to great, if not controlling, influence, and will generally be adopted and followed by the courts, particularly when the parties' interpretation is made before any controversy, or when the construction of one party is against his interest." (Citations and punctuation omitted.) *Anderson v. Anderson*, 274 Ga. 224, 226 (2) (552 SE2d 801) (2001). Thus, "the construction placed upon a contract by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them." (Citations and punctuation omitted.) *Cohen v. Sandy Springs Crossing Assocs., L.P.*, 238 Ga. App. 711, 712-713 (520 SE2d 17) (1999).

Although not expressly acknowledged by AgGeorgia, it appears undisputed that AgGeorgia had routinely obtained the non-borrowing brother's consent to loans extended to the other brother under the virtually identical Section Two of the 1997 deeds,[9] and the only reason that appears in the record to explain why AgGeorgia ceased obtaining the written consents was testimony by an AgGeorgia former employee that due to changes in its computer program, the consents were no longer

[9] One such consent, executed by Edwin in 2002, is contained in the record. That consent provides: "[t]he undersigned (whether one or more), having an interest in the real property described in the security instrument above referenced, hereby consent to the making of an advance in the amount of $217,300.00 and acknowledge that such is secured by the security instrument."

14

automatically generated when the loan documents were generated. Further, Donald testified and averred that AgGeorgia had requested that he take a consent form to Edwin to sign for one of his subsequent loans. Accordingly, AgGeorgia's own practices demonstrate that at least up until a certain point, it had adhered to the language inside the parenthetical when extending a loan to one of the Brothers.

Application of these well-established rules of statutory construction resolves the ambiguity in this case in favor of the construction placed on Section Two by Donald. Accordingly, we conclude that Section Two required written consent from the non-borrowing brother in order for the Farm to be pledged as security for future loans to the other brother. It follows that AgGeorgia wrongfully foreclosed on Donald's Subsequent Loans and Edwin's 2009 Loan because no consent was obtained and none of those debts were secured by the 2004 Deeds.

(b) *Section Three and the March 2004 Loan*. But that does not end our analysis because AgGeorgia argues that even if AgGeorgia was required to obtain consent under Section Two, its failure to do so did not render the foreclosure "wrongful" because Donald's March 2004 loan was secured by Section Three of DSD No. 1, which did not contain any consent requirement. Once again, however, the parties place varying interpretations on this provision of the deed.

Section Three provides in relevant part that "all other indebtedness of Borrower to Lender, now due or to become due, (whether directly or indirectly) or hereafter to be contracted, . . ." is secured under the terms of the deed. Donald argues that because Section Three refers to "other" loans, both pre-existing and those that might occur later, and Section Two refers to subsequent loans that are evidenced by a note, Section Three must necessarily refer only to loans which are *not* evidenced by a note or notes. In contrast, AgGeorgia directs our attention to the word "other" and argues that the use of this word merely distinguishes the debts covered by Section Three from those covered by Sections One and Two.

However, we need not belabor the meaning of Section Three, because we believe the March 2004 note was unsecured for another reason. As explained in Division 1, OCGA § 44-14-1 (b) specifically limits the operation of such open-end or dragnet clauses to "the original parties to the security instrument," and thus neither the pre-existing nor the subsequent debts of the individual brothers were secured by the note without a clear and unambiguous expression of such an intent. See *Sutton*, 167 Ga. App. at 863. Here, the March 2004 loan was obtained for an express purpose of securing a certain piece of farm equipment, and the farm equipment purchased with the loan proceeds was pledged as security for the loan. Only one outstanding loan was

16

specified in the deed, and Donald testified that the parties never discussed the Farm being pledged as additional security for the March 2004 equipment loan.

Because none of the notes declared in default were secured by the 2004 Deeds, AgGeorgia had no authority to foreclose under the terms of those deeds. Accordingly, the trial court erred by granting partial summary judgment to AgGeorgia; instead, partial summary judgment should have been granted to Donald.

2. Because of our holdings in Divisions 1 and 2, we need not reach the question of whether AgGeorgia improperly exercised the power of sale contained in the deeds because it had assigned both the notes and the 2004 Deeds to AgFirst prior to instituting the foreclosure proceedings.

*Judgment reversed. Andrews, P. J., Dillard and Boggs, JJ., concur. Barnes, P. J., Phipps, P. J., and Ray, J., dissent.*

A15A0486. CLARK v. AGGEORGIA FARM CREDIT ACA.

RAY, Judge, dissenting.

While I agree with the majority's decision to reverse the summary judgment which was granted in favor of AgGeorgia, although I do not necessarily agree with everything that was written in support of that conclusion, I must dissent from the majority's decision that the trial court should have instead granted summary judgment in favor of Donald. In my view, the entirety of this dispute should be resolved in a jury trial. Due to the inherent inconsistency in the applicable clauses in the loan documents, as well as the unique circumstances of this case wherein Donald's claims have evolved during the litigation to cast himself in a position of even greater harm despite the implicit acknowledgment in his original complaint that some action by AgGeorgia as to the subject property was proper given his indebtedness thereto, and the fact that ambiguity remains as to both the meaning of the contract provisions and the intent of the parties even after the application of the normal rules of construction,

I would instead return this case to the trial court to allow the parties to present their claims to a jury to sort out the respective contract rights and equities of the situation.

I am authorized to state that Presiding Judge Barnes and Presiding Judge Phipps join in this dissent.