Second, James Carter signed a hypothecation agreement dated March 18, 2013 (the "Hypothecation Agreement"). (James Carter's Brief Ex. 5, Pg. 1) In the agreement, James Carter again granted a security interest in the same separately owned tracts in Lowndes County to secure Walt Carter's obligations under the 2013 Loan. Like the Deed to Secure Debt, the Hypothecation Agreement contained an open-end clause. That clause provided: "[James Carter] agrees with the Lender that, to secure payment of the Liabilities (hereinafter defined), the Lender shall have a lien upon, security title to, and a security interest in [property owned by James Carter.]" (Id. ) The agreement defined "Liabilities" as "all obligations of [Walt Carter] to the Lender, however incurred or evidenced... now or hereafter existing, or due or to become due. " (Id. ) (emphasis added). Further, the agreement stated James Carter "waives notice of the existence or creation of all or any of the Liabilities." (Id. ) The Hypothecation Agreement was recorded on March 19, 2013. (Id. )
Between 2013 and 2016 Walt Carter obtained additional loans from AgGeorgia. In 2014 Walt Carter obtained an operating loan from AgGeorgia. The record is unclear as to exactly when Walt Carter incurred that debt and the exact amount of the loan; however, the parties each acknowledged the existence of the loan in oral argument. (See Oral Arg. at 54:50-56:13 and 1:01:03-1:02:58). The parties also acknowledged AgGeorgia did not seek James Carter's consent to extend the 2014 security interest to this new loan. (Id. ). In 2015, Walt Carter obtained additional financing from AgGeorgia of approximately $802,000. For that loan, AgGeorgia did seek and obtain James Carter's consent. (James Carter's Brief, Ex. 6 and James Carter's Dep. Pgs. 49-52[3] ).
In 2016, Walt Carter obtained a $1 million loan from AgGeorgia ("the 2016 Note"). (Compl. ¶ 17 and Walt Carter's Ans. ¶ 17). James Carter did not consent to the 2016 Note nor is there any evidence he was even aware of the loan. (James Carter's Resp. to 7056 Statement ¶ 6). Nevertheless, AgGeorgia contends the security interests extend to the 2016 Note by operation of the open-end clauses in the Deed to Secure Debt and Hypothecation Agreement (together "the Open-End Clauses").
II. Jurisdiction[4]
28 U.S.C. § 2201 grants federal courts the authority to enter a judgment *365 that declares "the rights and other legal relations of any interested party" in any "case of actual controversy within [the court's] jurisdiction."[5] AgGeorgia seeks an order determining the Open-End Clauses extend James Carter's grant of a security interest to the 2016 Note, which, of course, pertains to the "rights" or "legal relations" between the parties. Whether a case presents an "actual controversy" is a question pertaining to federal courts' constitutional jurisdiction. See Lake Carriers' Ass'n v. MacMullan , 406 U.S. 498, 506, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972) (holding a federal court must determine there is "a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co. , 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ). A federal court only has jurisdiction where the plaintiff establishes it:
(1) suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc. , 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Further, "a plaintiff seeking only... declaratory relief must prove not only an injury, but also a real and immediate threat of future injury in order to satisfy the injury in fact requirement." Koziara v. City of Casselberry , 392 F.3d 1302, 1305 (11th Cir. 2004). Federal Courts in this and other districts have determined that a "real and immediate threat of future injury" may arise when the rights of the parties could be conclusively determined in imminent litigation. See, e.g. , Bayer CropScience, LP v. Booth , 2005 WL 2138759, 2005 U.S. Dist. LEXIS 19411 (M.D. Ga. 2005) ; 800-Flowers, Inc. v. Intercontinental Florist, Inc. , 860 F.Supp. 128, 132 (S.D. N.Y. 1994).
Here, it is clear that the declaratory judgment the plaintiff seeks pertains to the parties' current rights and obligations under the Deed to Secure Debt and Hypothecation Agreement and that an interpretation of those rights would concretely change the parties' contractual obligations. Therefore, AgGeorgia clearly has standing to assert the action. Further, although the bankruptcy proceedings cannot terminate AgGeorgia's liens as they relate to James Carter's property, the proceeding will alter Walt Carter's obligations to AgGeorgia. This will create a default under the terms of the note and will entitle AgGeorgia to seek enforcement of its security interest. Should AgGeorgia initiate a foreclosure proceeding, it would need to determine the lien's extent. James Carter's challenge to Open-End Clause therefore creates a real and immediate threat of future injury because a successful challenge would significantly reduce AgGeorgia's collateral securing the 2016 Note.
This Court's jurisdiction over the matter, therefore, is the only remaining issue. The bankruptcy court through referral from the district court[6] has jurisdiction *366 over all civil proceedings "arising in or related to a case under title 11."[7] 28 U.S.C. § 1334(b). A case is sufficiently "related to" the Bankruptcy Code "if the proceeding could conceivably have any effect on the estate being administered in bankruptcy." Estate of Jackson v. Schron (In re Fundamental Long term Care, Inc.) , 873 F.3d 1325, 1336 (11th Cir. 2017) (quoting Pacor Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) ) (emphasis in original). Therefore, the test within this circuit for determining whether a matter is sufficiently related to the Code to give a bankruptcy court jurisdiction is whether "the outcome... in any way impacts upon the handling and administration of the bankrupt estate." Estate of Jackson , 873 F.3d at 1337 (quoting Pacor , 743 F.2d at 994 ) (internal quotations omitted). As previously discussed, whether the Open-End Clauses extend James Carter's grant of a security interest to the 2016 Note impacts both the security of AgGeorgia's claim and the disbursement of estate assets. Therefore, this Court has "related to" jurisdiction over this matter.
III. Summary Judgment Standard
Pursuant to Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, the Court must "grant summary judgment if the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue of fact is material if it affects the outcome of the case as identified by substantive law. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, in considering a motion for summary judgment, the court should only base its decision on facts that can be reduced to admissible evidence at trial. Macuba v. Deboer , 193 F.3d 1316, 1323 (11th Cir. 1999). Evidence that would be inadmissible at trial cannot defeat a summary judgment motion. Pritchard v. Southern Co. Servs. , 92 F.3d 1130, 1135 (11th Cir. 1996).
This case is particularly well suited for summary judgment. The Parties do not contest the execution of the documents nor do they dispute their authenticity. In fact, the issue before the Court is largely one of interpreting the rights between the parties as set forth in the Deed to Secure Debt and Hypothecation Agreement. Whether an agreement's language is ambiguous is a question of law, as opposed to one of fact. Garrett v. Southern Health Corp. of Ellijay, Inc. , 320 Ga. App. 176, 182, 739 S.E.2d 661 (2013). Therefore, no question of material fact would remain if the Court found the contract is unambiguous. The Court's only task would be to interpret the rights of the parties as set forth within the four corners of the agreement.
IV. Conclusions of Law
AgGeorgia's Motion for Summary Judgment argues the Open-End Clauses unambiguously extend James Carter's grant of a security interest to the 2016 Note. AgGeorgia contends the language is clear and does not contravene Georgia law and that this Court is therefore obliged to enforce the negotiated agreement between the parties.
The Defendant disagrees. James Carter's cross-motion for summary judgment argues the Open-End Clauses are ambiguous and that the Court should interpret *367 the clauses to require JamesCarter's consent to apply his 2013 grant of a security interest to the 2016 Note. Further, James Carter argues O.C.G.A. § 44-14-1(b) limits the Open-End Clauses' application, as less than all of the parties to the contract consented to the agreement.
a. Clark v. AgGeorgia Farm Credit, ACA
In support of his arguments, James Carter relies heavily on Clark v. AgGeorgia Farm Credit, ACA, 333 Ga. App. 73, 775 S.E.2d 557 (2015). His reliance is for good reason. Not only was the Plaintiff a party in the Clark case (and represented by the same counsel no less), that case involved the exact language used in the Deed to Secure Debt in this case. In Clark , two brothers executed two deeds to secure debt that each pledged the same jointly owned property as collateral. Each brother signed a deed as a "Borrower" and signed both deeds as the "Undersigned." Id. at 73-74, 775 S.E.2d 557. In doing so, each brother granted a security interest in the jointly owned property that secured each other's individual debts to the bank.
The deeds to secure debt included open-end clauses that extended the security interest to "all additional loans and advances that may subsequently be made to Borrower (or to any one or more of the parties designated as Undersigned or Borrower, with the written consent of the remainder of said Undersigned or Borrower), by Lender, which will be evidenced by a note or notes." Id. at 76, 775 S.E.2d 557. Accordingly, when one of the brothers obtained additional financing from the bank, the bank argued that the debt was secured by the jointly owned property regardless of whether the other brother consented to this extension. Upon the borrowing brother's default and a subsequent foreclosure action, the other brother filed an action for wrongful foreclosure. Id. at 74, 775 S.E.2d 557. The trial court dismissed the action, finding the open-end clause was enforceable.
On appeal, the Georgia Court of Appeals reversed. In coming to this conclusion, the court determined that the language in the deed could reasonably be interpreted in two ways: (i) that the deed required the consent of all parties when the borrower incurred additional debt or (ii) that the deed only required consent of the remaining undersigned parties if a party solely listed as the "Undersigned" incurred additional debt. Id. at 77, 775 S.E.2d 557. Having determined the language in the deed was ambiguous, the court applied the rules of contract construction and found the deed should be interpreted to require the consent of all parties to extend the security interest to newly incurred debt. In coming to this conclusion, the court examined the parties' prior conduct, noting that Ag Georgia "routinely obtained the nonborrowing brother's consent to loans extended to the other brother." Id. at 80, 775 S.E.2d 557. The court also paid particular attention to the effect of O.C.G.A. § 44-14-1(b), which the court found "limits the operation of [open-end clauses] to the original parties to the security instrument." Id. at 81, 775 S.E.2d 557. The court noted the language did not explicitly waive this requirement, and so it inferred the parties intended to incorporate it within the contract. Id.
Having been presented with the arguments announced in Clark , the Court will next address whether the Open-End Clauses here should be interpreted to require James Carter's consent.
b. Interpretation of the Open-end Clauses
In Georgia, a deed to secure debt memorializes the relationship and obligations between the parties to the deed. See generally *368 You v. JP Morgan Chase Bank, N.A. , 293 Ga. 67, 74, 743 S.E.2d 428 (2013) (holding that when a security deed grants a power of sale, the holder of the security deed is authorized to exercise that power even if it does not hold the note). The terms of a deed are interpreted like those of contracts; that is, a court should ascertain the intention of the parties as set forth within the deed. Shepherd v. Greer, Klosic & Daugherty , 325 Ga. App. 188, 189-90, 750 S.E.2d 463 (2013). Additionally, when an agreement is memorialized in two documents, as it is here, the documents "may be read together to show one contract." Foreman v. Chattooga Intl. Tech. , 289 Ga. App. 894, 896, 658 S.E.2d 470 (2008).
If the language of the contract "is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, [the contract provisions] shall be enforced irrespective of all technical or arbitrary rules of construction." Shepherd, 325 Ga. App. at 190, 750 S.E.2d 463 (quoting Homelife Communities Group v. Rosebud Park, LLC , 280 Ga. App. 120, 122, 633 S.E.2d 423 (2006) ). Therefore, a court's analysis in contractual disputes begins with the language of the contract and whether that language is ambiguous. A contract is ambiguous if the provisions could be reasonably interpreted in more than one way. Kusuma v. Metametrix, Inc. , 191 Ga. App. 255, 256, 381 S.E.2d 322 (1989) ; see also Verret v. ABB Power T & D Company, Inc. , 237 Ga. App. 492, 493, 515 S.E.2d 435 (1999) ("Ambiguity means duplicity, indistinctness, or uncertainty of meaning or expression.") (citing, Bumgarner v. Green , 227 Ga. App. 156, 159, 489 S.E.2d 43 (1997) ).
James Carter argues that the Deed to Secure Debt and the Hypothecation Agreement conflict each other and therefore, the Court should find the contract is ambiguous. The Deed to Secure Debt, he suggests, requires the consent of the "remaining parties." While on the other hand, the Hypothecation Agreement waives James Carter's right to consent. Certainly, a court should find a conflicting document ambiguous. See Brevard, Inc. v. Broadwater Management, Inc. , 235 Ga. App. 496, 498, 508 S.E.2d 747 (1998).
Counter to James Carter's argument, however, the Clark court determined that the same language in the Deed to Secure Debt does not explicitly require or waive the non-borrowing party's consent; rather, the Clark court found it necessary to rely upon the rules of contract construction to determine the meaning of the deed.[8] Alone and without reference to rules of construction, the open-end clause in the Deed to Secure Debt is unclear whether it requires James Carter's consent to extend the security agreement. The Hypothecation Agreement, however, resolves that ambiguity. The agreement unambiguously waives James Carter's right to "notice of the existence or creation of all or any of [Walt Carter's future obligations to AgGeorgia]." With such an explicit provision, the Court finds no conflicting language and that no ambiguity exists. The clear language in the Hypothecation Agreement ultimately distinguishes this case from the holding in Clark . Under Georgia law, a court should not interpret a contract to render an explicit provision "meaningless" or a "mere surplusage."
*369 Duke Galish, LLC v. Manton , 308 Ga. App. 316, 319, 707 S.E.2d 555 (2011). Resorting to the rules of construction to interpret a provision in a manner that contravenes another unambiguous provision in the contract clearly runs afoul of Georgia law.
James Carter also argues that AgGeorgia's request for consent in 2015 indicates AgGeorgia understood the agreement to require James Carter's consent. This argument fails because under Georgia Law a court must find ambiguity in the contract to consider extrinsic evidence. See Davis v. United Amer. Life Ins. Co. , 215 Ga. 521, 526, 111 S.E.2d 488 (1959) ("Construction of ambiguous contracts is the duty of the court, and it is only after application thereto of the pertinent rules of construction, and they remain ambiguous, that extrinsic evidence is admissible to explain the ambiguity.") As previously discussed, James Carter clearly waived his right to notice of Walt Carter's incurring additional debt. Accordingly, no ambiguity exists and the Court is prohibited from using the 2015 consent to interpret the parties' rights under the agreement. Even if the Court did consider the document, it would not change its interpretation. Though Walt Carter loaned money from AgGeorgia in the years between 2014 and 2016, AgGeorgia only requested James Carter's consent in 2015. One request for consent between the parties over the course of three years does not create a general course of conduct that any fact finder could reasonably infer reflected the parties' understanding of the agreement.
Further, the 2015 Consent Agreement was not, as James Carter additionally argued, an implicit waiver of the Hypothecation Agreement. First, procedural issues arise in asserting this argument. James Carter did not plead the affirmative defense of Waiver in his Answer, as required by FRBP 7008(c)(1). Additionally, there is no evidence in the record supporting AgGeorgia's actions were a waiver of their rights under the Hypothecation Agreement. Georgia law provides that, although a party may waive a contractual right implicitly, the facts surrounding the purported waiver "must amount to an intentional relinquishment of a known right." Goldsmith v. Peterson , 307 Ga. App. 26, 28, 703 S.E.2d 694 (2010). The 2015 consent agreement does not acknowledge AgGeorgia's relinquishment of a right and is only signed by James Carter.
Because there is no ambiguity, Georgia law requires the Court to interpret the rights between the parties according to language in the contract. Nevertheless, James Carter argues that the Open-End Clause contravenes O.C.G.A. § 44-14-1(b) and accordingly, the Court should not enforce the provision without James's consent.
c. O.C.G.A. § 44-14-1(b)
O.C.G.A. § 44-14-1(b) provides:
...the operation of "open-end" clauses contained in real estate mortgages or deeds conveying realty as security for a debt, which clauses provide that, in addition to securing the debt named or described in the instrument, such instruments or the property thereby conveyed shall also secure any other debt or obligation that may be or become owing by the mortgagor or grantor, is limited to the other debts or obligations arising ex contractu , as distinguished from those arising ex delicto , between the original parties to the security instrument.
While the section's main purpose appears to limit the extension of a security interest to debts arising ex delicto , Georgia courts have interpreted the subsection to require, under certain circumstances, the consent of all original parties to the security instrument to extend *370 the operation of an open-end clause. See, e.g. , Hill v. Perkins , 218 Ga. 354, 127 S.E.2d 909 (1962) ; Cordele Banking Co. v. Powers , 217 Ga. 616, 124 S.E.2d 275 (1962). Although Georgia law seemingly prefers the consent of all "original parties to the security instrument," it recognizes circumstances in which such consent is not necessary. An open-end clause may permit the extension of a security interest to newly acquired debt without the original parties' consents where the security agreement clearly and unambiguously provides such a right. Sutton v. Atlantic Bank & Trust Co ., 167 Ga. App. 861, 307 S.E.2d 746 (1983) ; In re Ryles , 457 B.R. 138 (Bankr. M.D. Ga. 2011).
In Sutton , for example, a security deed contained an open-end clause securing any indebtedness from the lender to the "Grantee." Two individuals granted the security interest in jointly owned property and thus, each was a "Grantee" as defined in the deed. When one of the borrowers incurred additional debt with the lender, the lender argued the debt was secured through the extension of an open-end clause, even without the other borrower's consent. To support this argument, the lender pointed to security deed's definition of "Grantee," which included the plural or singular. That is, both or either borrower's future obligations to the lender were secured by the collateral. The court agreed, finding the contract language superseded O.C.G.A. § 44-14-1(b)'s default construction.
Transitioning to the facts in this case, AgGeorgia argues the Open-End Clause within the Hypothecation Agreement waives James Carter's right to notice. The language there clearly extends the security interest to Walt Carter's later incurred debt, even without James Carter's consent. This clearly places the hypothecation agreement within the exception acknowledged in Sutton and by this Court in Ryles .
CONCLUSION
Having determined that together the deeds to secure debt and the Hypothecation Agreement unambiguously extend James Carter's grant of a security interest to subsequent loans, there is no ambiguity as to the meaning of the contract. Without ambiguity, there is no question of fact to be determined at trial. Therefore, this Court interprets the agreement according to the plain language set forth in the documents. James Carter waived his right to notice of future obligations incurred by Walt Carter. Accordingly, by operation of the Open-End Clauses, James Carter's grant of a security interest extends to Walt Carter's future obligations to AgGeorgia. Georgia law does not prohibit the operation of this negotiated agreement.
For these reasons, the Court GRANTS AgGeorgia's motion for summary judgment. The Court will enter an order in accordance with this Memorandum Opinion.

During James Carter's deposition he mistakenly stated that he signed the consent in 2014; however, his counsel stated that the correct date was in fact 2015. (See James Carter's Brief Pg. 2).

No party challenged the Court's jurisdiction to enter a declaratory judgment; however, "it is the duty of the federal court to determine the matter sua sponte ...." Fitzgerald v. Seaboard S.R., Inc. , 760 F.2d 1249, 1251 (11th Cir. 1985) (quoting Basso v. Utah Power and Light Co. , 495 F.2d 906, 909 (10th Cir. 1974) ). Further, the parties have consented to the issuance of a final order. (Compl. ¶ 10; James Carter's Ans. ¶ 10; Defendants Walt Carter and Carter & Sons' Ans. (AP No. 12) ¶ 10). Therefore, this Court may issue a final order pursuant to 28 U.S.C. § 157(b).

That bankruptcy courts are the creation of Congress and not an Article III court does not deprive them of the authority to enter a declaratory judgment. By operation of 28 U.S.C. § 151, bankruptcy courts are units of the district court and have equivalent authority to enter appropriate judgments on matters within their jurisdiction-subject, of course, to 28 U.S.C. § 157.

See 28 U.S.C. § 157(a).

All references to Title 11 of the United States Code herein will refer to that title as "the Bankruptcy Code" or "the Code."

Clark is binding precedent as to the language in the Deed to Secure Debt. West v. American Tel. & Tel. Co. , 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940) (holding decisions of intermediate state appellate court on state law are binding on a federal court unless the court determines that there is some significant doubt that the state supreme court would reject the statement of law).