**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER, P. J. AND MERCIER, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 10, 2016**

# In the Court of Appeals of Georgia

A15A1819. ENVISION PRINTING, LLC v. EVANS.

MERCIER, Judge.

Envision Printing, LLC sued Bernie Evans, alleging that he defaulted on a promissory note. Evans moved for summary judgment, asserting that he was not personally responsible for the debt because he had signed the promissory note solely in his capacity as an officer of a limited liability company. The trial court granted Evans's motion for summary judgment, and Envision Printing appeals. Finding no merit in Envision Printing's contentions, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Carter v. Moody*, 236 Ga. App. 262, 263 (511 SE2d 520) (1999) (citation and punctuation omitted).

So viewed, the record shows that Evans was the CEO of Red Rhino Market Group, LLC ("Red Rhino"), that Red Rhino was a customer of Envision Printing, and that Red Rhino was in arrears on its account with Envision Printing. On December 6, 2013, Evans executed a promissory note (hereafter, the "note") in favor of Envision Printing. In pertinent part, the note states:

> FOR VALUE RECEIVED, the undersigned (hereinafter referred to as "Maker") promises to pay to the order of Envision Printing, LLC, . . .

The terms of the note are set out thereafter, and this signature block follows:

WITNESS MY HAND AND SEAL.

Red Rhino Market Group, LLC

_____  _____(SEAL)
Witness                              By: Jeff Neiswanger, as manager

_____          _____(SEAL)
Witness                               Jeff Neiswanger

/s/_____          /s/_____(SEAL)
Witness                              Bernie Evans

2

The signatures of Evans and one witness appear on the two lines indicated; the words "By: Jeff Neiswanger, as manager (SEAL)," and "Jeff Neiswanger (SEAL)" are crossed out. There are no other signatures on the note.

In moving for summary judgment, Evans pointed to the following evidence: the note contained no language indicating that Evans would be personally responsible for the debt; the note used the singular term "Maker" throughout, and the signature box was titled "Red Rhino Market Group, LLC," under which were spaces for several signatures; the only address listed in the note as the Maker's address was Red Rhino's corporate address; Evans averred in an affidavit that he had signed the note solely in his capacity as CEO of Red Rhino; prior to signing the note, a Red Rhino employee sent an e-mail to Envision Printing stating that "Bernie have [sic] full authorization under the LLC documents *to sign for Red Rhino Market Group*" (emphasis added); an Envision Printing employee replied to that e-mail, also by e-mail, instructing the Red Rhino employee to "have Bernie sign it," and did not object to the "to sign for Red Rhino" statement; Envision Printing sent the note to Red Rhino's e-mail address for signatures; and a Red Rhino employee witnessed Evans's signing of the note.

In its response, Envision Printing argued that Evans was personally responsible for the debt. Envision Printing pointed to, among other things, the affidavit of its

3

(Envision Printing's) president wherein the latter averred that Evans had "signed the Note personally[, and] Envision accepted the Note as a personal obligation of Bernie Evans and continued to do business with Red Rhino after receiving the Note." Envision Printing also asserted that Evans had signed the note without indicating thereon that he was doing so in a representative capacity.

In its order granting summary judgment to Evans, the trial court found that Evans had signed the promissory note solely in his representative capacity and was not personally liable. The court further found that Envision Printing knew that Evans had not signed in his personal capacity, and that Evans was entitled to an award of attorney fees pursuant to OCGA § 9-15-14 (in an amount to be later determined); the court directed the parties to submit an affidavit and response in connection with Evans's attorney fee request.

1. Envision Printing contends that the trial court erred by granting summary judgment to Evans when, pursuant to OCGA § 11-3-402 (b) (2), he was personally liable under the note. We disagree.

> Generally, a corporation's officers and the corporation are entirely separate and distinct entities. Contracts may be signed by one acting in a representative capacity, or a representative may make himself liable

4

for the debt of the corporation; this Court examines the language of the contract to determine in what capacity the representative is bound.

*Grot v. Capital One Bank (USA)*, 317 Ga. App. 786, 794 (6) (732 SE2d 305) (2012); see *American Arbitration Assn. v. Bowen*, 322 Ga. App. 51, 53 (743 SE2d 612) (2013) (like a corporation, a limited liability company is a business entity that protects its members from personal liability for business debts; members may incur personal liability for an LLC's business debts if they execute a written agreement to personally guarantee the company's debts and liabilities).

> The construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, no construction is required, and the court simply enforces the contract according to its clear terms. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2.

*General Steel v. Delta Bldg. Sys*., 297 Ga. App. 136, 139 (1) (676 SE2d 451) (2009).

"The cardinal rule of contract construction is to ascertain the intention of the parties." *Empire Distributors v. George L. Smith &c.*, 235 Ga. App. 742, 744 (509 SE2d 650) (1998); OCGA § 13-2-3. We note that "[c]ontract disputes are particularly well suited for adjudication by summary judgment." *Elwell v. Keefe*, 312 Ga. App. 393, 394-395 (718 SE2d 587) (2011) (footnote omitted). In this case, looking at the whole contract, we conclude that there is ambiguity as to the capacity in which Evans signed, but, as discussed below, that ambiguity can be resolved by applying the rules of contract construction.

OCGA § 11-3-402 (b) prescribes the conditions under which an authorized representative's signature on a note may make the representative personally liable for the obligation. *Marek Interior Sys. v. White*, 230 Ga. App. 518, 519 (1) (496 SE2d 749) (1998). That statute provides, in pertinent part:

> (2) . . . if the form of the signature does not show unambiguously that the signature is made in a representative capacity or the represented person is not identified in the instrument, the representative is liable on the instrument to a holder in due course that took the instrument without notice that the representative was not intended to be liable on the instrument. With respect to any other person, the representative is liable on the instrument unless the representative proves that the original parties did not intend the representative to be liable on the instrument.

6

In this case, the form of Evans's signature does not show *unambiguously* that he signed the instrument in a representative capacity. See OCGA § 11-3-402 (b) (2). At the same time, the represented person (Red Rhino Market Group, LLC) *is* clearly identified in the instrument. Id. Thus, under OCGA § 11-3-402 (b) (2), Evans is liable if Envision Printing took the note "without notice that [he] was not intended to be liable on the instrument." We conclude that Envision Printing had notice that the Evans was not intended to be personally liable on the note.

In interpreting a contract, we are required to look at the whole contract and give the contract a reasonable construction. See OCGA § 13-2-2; *McClendon v. Priest*, 259 Ga. 59, 60 (376 SE2d 679) (1989). The note in this case does not expressly or unequivocally state that Evans was personally guaranteeing the obligation of Red Rhino (an LLC) or that, by signing, he was waiving all defenses to the note's enforcement. See *Elwell*, supra at 396. And, other than his name being listed in the signature box below "Red Rhino Market Group, LLC" and Jeff Neiswanger's name, nothing in the note identifies or pertains to Evans personally. Further, Envision Printing has pointed to a separate document (titled "Credit Application") that Red Rhino's manager (Neiswanger) executed, wherein Neiswanger expressly agreed to personally guarantee payment of Red Rhino's indebtedness to

7

Envision Printing. But Evans signed no such document. Finally, "[u]nder the statutory rules of contract construction, if a contract is capable of being construed two ways, it will be construed against the preparer and in favor of the non-preparer. OCGA § 13-2-2 (5)." *Hertz Equip. Rental Corp. v. Evans*, 260 Ga. 532, 533 (397 SE2d 692) (1990) (citation omitted). Envision Printing prepared the promissory note. The trial court did not err in construing the contractual ambiguity against Envision Printing. See id.

2. Envision Printing contends that the trial court erred by considering parol evidence. However, in interpreting contracts, "[a]ll the attendant and surrounding circumstances may be proved and, if there is an ambiguity, latent or patent, it may be explained." OCGA § 13-2-2 (1). See *Marek Interior Sys. v. White*, 230 Ga. App. 518, 520-521 (2) (496 SE2d 749) (1998) ("parol evidence is admissible if there is an ambiguity on the face of the instrument on the issue of representative capacity"); *Empire Distribs*., supra at 744 (parol evidence is admissible to explain an ambiguity in a written contract); *Dundon v. Forehand*, 152 Ga. App. 749, 750 (1) (a) (263 SE2d 687) (1979) (parol evidence is admissible to explain the capacity in which one signed an agreement in which the language is ambiguous). Envision Printing's reliance on *Attkisson v. Cavanaugh*, 201 Ga. App. 633 (411 SE2d 786) (1991), is misplaced

8

because that case was decided pursuant to former versions of OCGA §§ 11-3-402 and 11-3-403; those statutes underwent substantive changes in 1996, such that a different analysis now applies. See *Attkisson*, supra; *Marek Interior Sys.*, supra. We also note that the instrument in *Attkisson*, when viewed as a whole, may not have presented an ambiguity; the opinion in that case does not include such details. Id. The trial court did not err by considering parol evidence in the instant case.

3. Envision Printing contends that the court erred because if the note was ambiguous, such ambiguity presented a question of fact for the jury. This contention is without merit. Construction of ambiguous contracts is the duty of the court, and no jury question is raised unless after application of pertinent rules of construction ambiguity remains. *Archer v. Carson*, 213 Ga. App. 161, 163 (1) (444 SE2d 82) (1993). "[W]here the contract is ambiguous in its terms, then the trial court must apply the rules of construction to determine the intent of the parties as a matter of law prior to any jury determination." *In re Estate of Sims*, 259 Ga. App. 786, 788 (1) (578 SE2d 498) (2003) (citations omitted); see generally OCGA § 13-2-2 ("The construction of a contract is a question of law for the court."). In this case, the trial court was authorized to resolve the ambiguity. See generally *Archer*, supra.

4. Envision Printing contends that "the trial court erred in directing the parties to submit affidavits on attorney's fees because the underlying judgment is in error"; Envision Printing asserts no other basis for reversal in connection with the attorney fee ruling. As we explained in Divisions 1 through 3, supra, the trial court did not err by entering judgment in Evans's favor. Therefore, this contention is without merit.

*Judgment affirmed. Andrews, P. J., and Miller, P. J., concur*.