**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, P. J., and SELF, J.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 1, 2017**

# In the Court of Appeals of Georgia

A17A1591. Y. C. DEVELOPMENT INC. v. NORTON.

DILLARD, Chief Judge.

Y. C. Development Inc. ("YCD") appeals from the trial court's grant of summary judgment to Chandra Norton on her claims against YCD for wrongful foreclosure. YCD argues that the trial court erred by (1) erroneously construing the terms of the parties' purchase money note and security deed and (2) finding that YCD failed to comply with the terms of those documents before exercising its power of sale and foreclosing on Norton's property. Because we agree that the trial court erred in its interpretation of the terms contained in the purchase money note and security deed, we reverse.

Viewed in the light most favorable to YCD (*i.e.*, the nonmoving party),[1] the undisputed facts show that on October 21, 2010, Norton executed a purchase money note in favor of YCD in the amount of $258,000 , which was secured by the Cherokee County property at issue. In the event of default, the note provided specific remedies, as follows:

> If [Norton] fails to pay when due any amount payable under this note or if [Norton] shall be in default under the Security Deed and such failure or default continues for ten (10) days after [Norton's] receipt of [YCD's] written notice thereof, in the case of failure to pay any amount payable under this note, or for thirty (30) days after [Norton's] receipt of [YCD's] written notice thereof, in the case of any other defaults, then [Norton] shall be in default under this note. In the event [Norton] shall be in default under this note, at the option of [YCD] and without further demand or notice, the entire unpaid principal balance of this note may be declared and thereupon immediately shall become due and payable, and the principal portion of such sum shall bear interest at the rate of ten percent (10%) per annum from the date of default until paid, and [YCD], at the option of [YCD] and without demand or notice of any kind, may exercise any and all rights and remedies provided for or allowed by the Security Deed, or provided for or allowed or in equity[.]

---

[1] *See, e.g.*, *SunTrust Bank v. Equity Bank, S.S.B.*, 312 Ga. App. 644, 644 (719 SE2d 539) (2011).

The note also included definitions for certain terms, but it did not define the use of the word "receipt." The note *did*, however, specify that "[a]ll notices, requests, demands and other communications under this note shall be in writing and *shall be deemed to have been duly given if given in accordance with the provisions of the Security Deed*."[2]

The security deed, which was executed the same day as the note, provided as follows in terms of giving "notice" to the grantor (Norton):

> All notices, requests, demands and other communications under this Security Deed or the Note shall be in writing and shall be deemed to have been duly given: (i) to [Norton] when personally delivered to any office of [Norton], . . . or (iii) two (2) days after deposited in the United States Mail, certified mail with return receipt requested and with all postage prepaid, addressed as follows:
>
> (a) To [Norton]: [address left blank]
>
> (b) To [YCD]: [address provided]

On September 30, 2015, YCD sent a notice of default to both Norton's primary residence address and to the Cherokee County address. Then, after Norton's loan

---

[2] (Emphasis supplied.)

3

matured and became due in full, YCD sent out a second notice of default on February 3, 2016, by sending a letter via certified mail to Norton's primary residence address, the Cherokee County property, and to a business address listed in Norton's email signature.[3] The certified letters sent to Norton's primary residence and the business address were returned as undeliverable. And according to the postal carrier assigned to the Cherokee County property's route, mail accumulated in the box at that address, he had been unable to deliver certified mail, and he personally signed for the certified mail delivery of the February 3, 2016 letter on February 18, 2016, because he mistakenly believed that the recipient had requested re-delivery after an initial failed attempt.

On February 26, 2016, YCD sent a letter by certified mail to notify Norton of its intent to foreclose upon the Cherokee County property. This letter was again mailed to Norton's primary residence address, the subject property itself, and to the business address; and each was returned to YCD as undeliverable. Thereafter, YCD initiated non-judicial foreclosure proceedings, eventually purchasing the property as

[3] YCD also sent notice of default to Norton via email on February 3, 2016. The trial court struck an affidavit statement that Norton "received the e-mail simply because [an asset manager] sent it" due to the fact that the asset manager did not indicate that this statement was based upon personal knowledge. Norton denied ever receiving the email.

the highest bidder at the sale. YCD then began disposessory proceedings, and Norton filed suit against YCD in April 2016, asserting that YCD had wrongfully foreclosed upon her property and was in breach of contract, as well as seeking to set aside the deed. Norton contended that YCD failed to comply with the notice provisions in the note and security deed because she never *received* notice. In its answer, YCD denied that it failed to comply with the notice provisions or that it had wrongfully foreclosed upon the Cherokee County property.

Norton filed a motion for summary judgment, arguing that the terms of the note and security deed required *actual* receipt of notice of default and that, because she never actually received such notice, YCD failed to comply with those terms and wrongfully foreclosed upon the property. Norton averred that she purchased the Cherokee County property as a second home and designated her primary residence as the location for notice. But as previously noted, the face of the security deed shows that Norton's address for purposes of notice via certified mail was left blank. Nevertheless, in her "statement of material facts as to which there is [sic] no genuine issues to be tried," she relied upon her affidavit to assert that it was undisputed that she had designated her primary residence as the location for notice. And in response

to that filing, YCD explicitly stated that, for purposes of summary judgment, it did not dispute this assertion.

YCD opposed Norton's motion for summary judgment, arguing that it had complied with the terms of the parties' agreement; that Norton was supplying a term not required by the agreements, which specified provision of "notice" and not "actual notice"; and that Norton had in fact refused to accept the notice sent by certified mail. YCD also moved for summary judgment on the basis that it had complied with the notice requirements.

Norton thereafter filed an amended complaint. In addition to amending her claims for wrongful foreclosure and breach of contract, and adding new claims and requests for relief,[4] the second complaint also amended Paragraph 6, which originally read as follows: "The subject premises was primarily used by Plaintiff as a 'weekend home' and was never utilized as a full time residence. As such, the home remained vacant for much of the year with no one living on the property to accept mail deliveries, especially during the week." In the amended complaint, Norton added the

---

[4] The amended complaint added claims for equity of redemption, tortious interference with property rights, slander of title, and defamation, and sought declaratory judgment/quiet title, attorney fees and costs of litigation, and punitive damages.

following sentence to Paragraph 6: "Plaintiff designated her primary home as the location for notice."

Following a hearing, the trial court issued an order on February 2, 2017, ruling on the parties' cross motions for summary judgment. The court granted summary judgment in Norton's favor after concluding that the text of the security deed was unambiguous and required that Norton actually receive notice of default before YCD could initiate the default remedy of power of sale. The court rejected YCD's arguments as to "constructive receipt" of the certified mail or (alternatively) that the letter dated February 26, 2016, satisfied the notice requirements.

YCD now appeals from the trial court's grant of summary judgment in favor of Norton and the denial of summary judgment in its favor. Summary judgment is, of course, proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law[.]"[5] And we review a grant or denial of summary judgment *de novo*, construing "the evidence in the light most

---

[5] OCGA § 9-11-56 (c); *accord Matson v. Bayview Loan Srv., LLC*, 339 Ga. App. 890, 890 (795 SE2d 195) (2016).

favorable to the nonmovant."[6] With these guiding principles in mind, we will now address YCD's contentions in turn.

1. First, YCD argues that the trial court erred in its interpretation of the notice requirements contained in the note and security deed. We agree.

In Georgia, "a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies."[7] And the construction of an unambiguous deed, like the construction of any other contract, is "a question for determination by the court."[8] The cardinal rule of construction is, of course, to "ascertain the intention of the parties, as set out in the language of the contract."[9] In this regard, contract disputes are "particularly well

---

[6] *Matson*, 339 Ga. App. at 890.

[7] *Clark v. AgGeorgia Farm Credit ACA*, 333 Ga. App. 73, 75 (1) (775 SE2d 557) (2015) (punctuation omitted); *accord Stewart v. Suntrust Mortg., Inc.*, 331 Ga. App. 635, 638 (3) (770 SE2d 635) (2015); *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327, 328 (270 SE2d 867) (1980); *see also Giordano v. Stubbs*, 228 Ga. 75, 77 (184 SE2d 165) (1971) ("The deed constituted a contract . . . and its provisions are controlling as to the rights of the parties and their privies.").

[8] *Clark*, 333 Ga. App. at 75 (1) (punctuation omitted); *accord Turk v. Jeffreys–McElrath Mfg. Co.*, 207 Ga. 73, 76 (2) (60 SE2d 166) (1950).

[9] *Clark*, 333 Ga. App. at 75-76 (1) (punctuation omitted); *accord Envision Printing, LLC v. Evans*, 336 Ga. App. 635, 638 (1) (786 SE2d 250) (2016); *Shepherd v. Greer, Klosic & Daugherty*, 325 Ga. App. 188, 189-90 (750 SE2d 463) (2013).

suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court."[10]

It is well established that contract construction entails a three-step process, beginning with the trial court's determination as to "whether the language is clear and unambiguous."[11] If no construction is required because the language is clear, the court then enforces the contract according to its terms.[12] But if there is ambiguity in some respect, the court then proceeds to the second step, which is to "apply the rules of contract construction to resolve the ambiguity."[13] Finally, in the third step, "if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury."[14]

---

[10] *Elwell v. Keefe*, 312 Ga. App. 393, 394-95 (718 SE2d 587) (2011) (punctuation omitted); *accord Evans*, 336 Ga. App. at 638 (1).

[11] *Evans*, 336 Ga. App. at 638 (1) (punctuation omitted); *accord Michna v. Blue Cross & Blue Shield of Ga., Inc.*, 288 Ga. App. 112, 113 (653 SE2d 377) (2007).

[12] *Evans*, 336 Ga. App. at 638 (1); *Michna*, 288 Ga. App. at 113.

[13] *Evans*, 336 Ga. App. at 638 (1) (punctuation omitted); *accord Michna*, 288 Ga. App. at 113.

[14] *Evans*, 336 Ga. App. at 638 (1) (punctuation omitted); *accord Michna*, 288 Ga. App. at 113.

Importantly, as an initial matter, "the existence or nonexistence of an ambiguity is a question of law for the court."[15] Should the court determine that ambiguity exists, "a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2."[16] Here, the trial court found *no* ambiguity in the terms of the contract and ruled in Norton's favor, using her interpretation of the note and security deed. We disagree that the relevant terms of the note and security deed support Norton's interpretation of same. Instead, after applying the rules of contract construction, we conclude that the language at issue demands summary judgment in favor of YCD.

As previously explained, the note provided that if Norton failed to pay, when due, any amount payable under the note, or that if Norton was in default under the terms of the security deed and continued to be in default or failed to pay "for ten (10) days after [her] receipt of [YCD's] written notice thereof, in the case of failure to pay any amount payable under this note, or for thirty (30) days after [her] receipt of [YCD's] written notice thereof, in the case of any other defaults, then [she] [would] be in default under [the] note." It is the use of "receipt of . . . written notice" upon

---

[15] *Evans*, 336 Ga. App. at 638 (1) (punctuation omitted).

[16] *Id.* (punctuation omitted).

which Norton hangs her hat and contends that she was required to *actually receive* notice before YCD could initiate foreclosure proceedings. But Norton's interpretation ignores the remainder of the note, and "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part[.]"[17]

Indeed, as we detailed *supra*, although the note did not define the use of the word "receipt," it *did* specify that "[a]ll notices, requests, demands and other communications under this note shall be in writing and *shall be deemed to have been duly given if given in accordance with the provisions of the Security Deed*."[18] Thus, the note made specific reference to the terms of the security deed to define when notice would be "deemed to have been duly given."

The security deed provided that:

> All notices, requests, demands and other communications under
> this Security Deed or the Note shall be in writing and shall be deemed

---

[17] OCGA § 13-2-2 (4). *Cf. W. Ray Camp, Inc. v. Cavalry Portfolio Servs., Inc.*, 308 Ga. App. 597, 599 (708 SE2d 560) (2011) ("In determining whether notice required under a specific statute must be received, the language of the particular statute in issue must be interpreted in accordance with recognized principles of construction . . . ." (punctuation omitted)); *Five Star Steel Contractors, Inc. v. Colonial Credit Union*, 208 Ga. App. 694, 696 (431 SE2d 712) (1993) (same).

[18] (Emphasis supplied.)

11

to have been duly given: (i) to [Norton] when personally delivered to any office of [Norton], . . . or (iii) two (2) days after deposited in the United States Mail, certified mail with return receipt requested and with all postage prepaid, addressed as follows:

> (a) To [Norton]: [address left blank]

> (b) To [YCD]: [address provided]

Once again, notwithstanding that Norton's address was left blank on the face of the security deed, it is undisputed between the parties that Norton provided her primary residence address for purposes of notice under the security deed. It is also undisputed that YCD did not make personal delivery of notice to Norton under the first option for providing notice. Thus, according to the terms of the security deed, the only other method by which YCD could "duly give" notice to Norton was to send "certified mail with return receipt requested and with all postage prepaid, addressed" to Norton's primary residence. And this portion of the security deed further specified that the notice would be "deemed to have been duly given" by this method "two (2) days after deposited in the United States Mail[.]"

It is generally true that, when notice is required to be given, "in the absence of anything appearing to the contrary, that the notice is not complete until it is received,

12

and that, while mailing a notice duly directed and stamped may furnish presumptive evidence of its receipt, it does not alone constitute notice."[19] Indeed, the word "receipt," which is used in the note, means "[t]he act of receiving something *given* or handed to one; the fact of being received."[20] And "received" means "[t]o have (a thing) *given* or handed to oneself; to get from another or others" or "[t]o get (a letter, etc.) brought to oneself or delivered into one's hands."[21] But the security deed, which the note references as controlling *how* notice will be *given*, specifies that the act of "duly *giving*" notice between the parties is deemed accomplished, when using certified mail, two days after depositing the notice in the mail—not when the notice

---

[19] *Puryear v. Farmers' Mut. Ins. Ass'n*, 137 Ga. 579, 578 (2) (73 SE 851) (1912); *accord Menke v. First Nat'l Bank of Am.*, 168 Ga. App. 495, 497 (1) (309 SE2d 835) (1983) (physical precedent only); *St. Paul Fire & Marine Ins. Co. v. C.I.T. Corp., for Use of Houston*, 55 Ga. App. 101, 101 (189 SE 390) (1936) (Syllabus Opinion by the Court).

[20] The Compact Oxford English Dictionary 312 (2d ed. 1991) (emphasis supplied).

[21] The Compact Oxford English Dictionary 316 (2d ed. 1991) (emphasis supplied).

is *actually received or delivered.*[22] As a result, the note and security deed explicitly

---

[22] *See Genone v. Citizens Ins. Co. N.J.*, 207 Ga. 83, 86-88 (2) (60 SE2d 125) (1950) (holding that, when parties to contract "agreed that the mailing of the notice would constitute sufficient proof of notice," the parties "made the act of mailing the written notice, and not the actual receipt of the notice, the essential requirement to cancel the policy," and case was distinguishable from those holding that when "notice of cancellation is attempted to be effected by mail, there must be proof that the insured received the notice before cancellation can be effected" because, in the cited cases, "the policy did not prescribe a method or manner in which notice of cancellation could be given"); *Queen Ins. Co. of Am. v. Nalley Discount Co.*, 215 Ga. 837, 838 (1)-(2) (114 SE2d 21) (1960) (applying the holding in *Genone* to terms of a similar policy, and holding that "the cancellation provision of the policy was clear and unambiguous, and that mailing of notice of cancellation to the insured at the address given in the policy without proof of actual receipt of the notice effected cancellation of the policy"); *St. Paul Fire & Marine Ins. Co.*, 55 Ga. App. at 390-91 (holding that, when policy provided that "[n]otice of cancellation mailed to the address of the assured stated in this policy shall be a sufficient notice," the general rule requiring receipt did not apply because the policy provided for "how the notice of cancellation and return of unearned premium could be effected"); *see also In re Glover*, Case No. 13-12445, 2014 WL 688095, at *1, *6 (Bankr. S.D. Ga. Feb. 19, 2014) (interpreting provision that "[a]ny notice mailed shall be deemed to have given on the second (2nd) business day following the date of deposit of such item in a depository of the United States Postal Service" as avoiding requirement that notice actually be received, and applying the foregoing Georgia state appellate court cases). *Cf. Menke*, 168 Ga. App. at 495, 498 (1) (physical precedent only) (construing provision that "holder must, before the exercise of his option to declare the entire remaining balance due and payable[,] give maker written notice specifying the default and giving maker fifteen (15) days in which to cure said default. Said notice must be by certified mail addressed to the maker's last address" as "obligat[ing] appellee to 'give' appellant notice, not merely to send him notice" and that "mailing of the notices was contemplated as the means and method by which notice to appellant would be effectuated, not the contemplated 'notice' itself, and that for notice to be effectuated appellant would have to have received them" (punctuation omitted)).

14

delineate what constitutes sufficient notice under these documents.

The conclusion that "actual receipt" of the certified mail was not required because notice by this method was deemed "duly given" two days after being deposited is bolstered not only by the inclusion of this specific two-day period, but also by the language that appears directly below this provision and reads as follows: "Either party may, by written notice to the other, designate a different address for receiving notices hereunder; *provided*, *however*, that no change to [Norton's] address for receiving notices hereunder shall be effective until [YCD] *has actually received* notice thereof."[23] This provision conclusively demonstrates that the note and security deed draw a clear distinction between "receipt" and "actual receipt."[24]

---

[23] (First emphasis in original; second emphasis supplied.)

[24] *See* OCGA § 13-2-2 (4) ("The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part[.]"). *Cf. W. Ray Camp, Inc.*, 308 Ga. App. at 599 ("In determining whether notice required under a specific statute must be received, the language of the particular statute in issue must be interpreted in accordance with recognized principles of construction . . . ." (punctuation omitted)); *Five Star Steel Contractors, Inc.*, 208 Ga. App. at 696 (same).

15

Accordingly, because actual receipt of notice was not required by the terms of the security deed when providing notice by certified mail, the trial court erred in its interpretation of the contract.[25]

2. Next, YCD contends that the court erroneously concluded that YCD failed to comply with the terms of the purchase money note and security deed before exercising the power of sale and foreclosing upon Norton's property. We agree.

Given our holding in Division 1, YCD complied with the terms of the note and security deed when it sent by "certified mail with return receipt requested and with all postage prepaid" notice of default to Norton's primary residence on February 3, 2016. Indeed, it is undisputed between the parties that Norton specified her primary residence as the address for receiving notice and that on February 3, 2016, YCD sent notice to that address by certified mail. All that the parties disputed was whether Norton was required to *actually receive* the notice. Because we determined in Division 1 that actual receipt was not required by the terms of the security deed when using certified mail, Norton was deemed to have been "duly given" (*i.e.*, to have received) the February 3, 2016 notice "two (2) days after [YCD] deposited [same] in

---

[25] *See supra* note 22.

16

the United States Mail, certified mail with return receipt requested and with all postage prepaid[.]"

For all these reasons, we reverse the grant of summary judgment in favor of Norton and the denial of summary judgment in favor of YCD.[26]

*Judgment reversed. Ray, P. J., and Self, J., concur.*

---

[26] Because we agree with YCD's interpretation of the note and security deed, reversal of the grant of summary judgment to Norton is dispositive of YCD's competing motion for summary judgment on this same question. But we note that our reversal of the denial of YCD's motion for summary judgment is *only* as to the issue of notice under the terms of the note and security deed and does not decide any other issues or questions that may remain pending below and are as yet unaddressed by the trial court.

17