**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 27, 2018**

# In the Court of Appeals of Georgia

A18A0297. FANNIE MAE v. LAS COLINAS APARTMENTS, LLC et al.

REESE, Judge.

Fannie Mae appeals from an order of the Superior Court of Cobb County denying its motion for summary judgment and granting the cross motion for summary judgment filed by Las Colinas Apartments, LLC, and Allen Gross (collectively, "Appellees") in Fannie Mae's action seeking a deficiency judgment after confirmation of a foreclosure sale. For the reasons set forth, infra, we reverse the order of the trial court and remand the case for proceedings consistent with this opinion.

Viewed in the light most favorable to Fannie Mae,[1] the evidence shows the following. In April 2008, Las Colinas refinanced a loan with HSBC Realty Credit

---

[1] See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Corporation in the principal amount of $12,500,000, and executed a Multifamily Note ("Note") in HSBC's favor. Gross executed an "Acknowledgment and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability" (hereinafter, "Guaranty") that was attached to the Note. The loan was secured by property commonly known as Las Colinas Apartments ("Property"), located in Marietta, as set forth and legally described in a "Multifamily Deed to Secure Debt, Assignment of Rents and Security Agreement" ("Security Deed"). On the same day the loan was executed, HSBC endorsed the Note and assigned the Security Deed to Fannie Mae. The Note, Guaranty, and Security Deed are collectively referred to as the "Loan Documents."

In 2009 and the first half of 2010, several vendors recorded materialman's liens against the Property. In its amended responses to Fannie Mae's requests for admission, Las Colinas admitted that it "did not pay or remediate" the liens of Competitive Services, LLC, Atlanta's Reliable Roofing Company, Wilmar Industries, and Newscapes, LLC "within thirty days of [their] creation."

In addition, Las Colinas failed to make payments as required under the terms of the Note, and Fannie Mae foreclosed on the Property on October 5, 2010. The Superior Court of Cobb County confirmed the foreclosure sale, finding, inter alia, that

the Property, which had sold to the highest bidder for $5,000,000, brought at least its fair market value of $3,300,000 at the time of sale.

Fannie Mae filed a complaint for a deficiency judgment against Las Colinas and Gross, pursuant to the Guaranty he had executed, for the satisfaction of the entire unpaid indebtedness under the Loan Documents. Fannie Mae alleged that Appellees were jointly and severally liable on the Note because the recorded materialman's liens constituted prohibited "Transfers" of the Property and were therefore "Events of Default" under the Security Deed.

The trial court granted summary judgment in favor of the Appellees, and Fannie Mae appealed.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. On appeal from the grant of summary judgment [the appellate court] conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[2]

---

[2] *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003) (citations and punctuation omitted).

Further,

> the construction of an unambiguous [security] deed, like the
> construction of any other contract, is a question for determination by the
> court. The cardinal rule of construction is, of course, to ascertain the
> intention of the parties, as set out in the language of the contract. In this
> regard, contract disputes are particularly well suited for adjudication by
> summary judgment because construction of contracts is ordinarily a
> matter of law for the court.[3]

With these guiding principles in mind, we turn now to Fannie Mae's claims of error.

1. Fannie Mae argues that the trial court erred in finding that its recovery on the Note was limited to the foreclosure sale proceeds. We agree with Fannie Mae that the Loan Documents clearly and unambiguously provided for the personal liability of Appellees on the Note.

> It is well established that contract construction entails a three-step
> process, beginning with the trial court's determination as to whether the
> language is clear and unambiguous. *If no construction is required*
> *because the language is clear, the court then enforces the contract*
> *according to its terms.* But if there is ambiguity in some respect, the
> court then proceeds to the second step, which is to apply the rules of
> contract construction to resolve the ambiguity. Finally, in the third step,

---

[3] *Y. C. Dev. Inc. v. Norton*, 344 Ga. App. 69, 72-73 (1) (806 SE2d 662) (2017) (punctuation and footnotes omitted; emphasis supplied).

if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. Importantly, as an initial matter, the existence or nonexistence of an ambiguity is a question of law for the court. Should the court determine that ambiguity exists, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2.[4]

The Note was structured as a non-recourse loan. Specifically, Paragraph 9 (a) provided in part:

> Except as otherwise provided in this Paragraph 9, [Las Colinas] shall have no personal liability under this Note, the Security [Deed] or any other Loan Document for the repayment of the Indebtedness . . . , and [Fannie Mae's] only recourse for the satisfaction of the Indebtedness . . . shall be [Fannie Mae's] exercise of its rights and remedies with respect to [the Property].

However, the Note contained exceptions that would result in full personal liability for Las Colinas under pre-determined circumstances, which included "Events of Default" by Las Colinas. In relevant part, Paragraph 9 (c) (2) provided that: "[Las Colinas] shall become personally liable to [Fannie Mae] for the repayment of all of

---

[4] *Y. C. Dev. Inc.*, 344 Ga. App. at 73 (1) (punctuation and footnotes omitted).

the Indebtedness[5] upon the occurrence of any of the following Events of Default: . . . a Transfer that is an Event of Default under Section 21 of the Security [Deed]." Section 1 (z) of the Security Deed included in its definition of "Transfer" "the granting, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law)[.]"

Section 21 (a) (1) of the Security Deed specified that "[t]he occurrence of any of the following events shall constitute an Event of Default under this Instrument: a Transfer of all or any part of the Mortgaged Property or any interest in the Mortgaged Property[.]" However, Section 21 (b) (6) of the Security Deed provided in relevant part:

> The occurrence of any of the following events shall not constitute an Event of Default under this Instrument, notwithstanding any provision of Section 21 (a) to the contrary: . . . (6) the creation of a tax lien or a mechanic's, materialman's or judgment lien against the Mortgaged Property which is bonded off, released of record or otherwise remedied to [Fannie Mae's] satisfaction within 30 days of the date of creation.

---

[5] The Note defines "Indebtedness" as "[t]he principal of, interest on, or any other amounts due at any time under[ ] this Note, the Security Instrument or any other Loan Document, including prepayment premiums, late charges, default interest, and advances to protect the security of the Security Instrument under Section 12 of the Security Instrument."

Under the Guaranty, Gross, as "Key Principal," agreed to pay all of Las Colinas's personal obligations under Paragraph 9 of the Note.

The trial court found "that the overriding intent of the parties was for the loan to be non-recourse," i.e., Fannie Mae's recovery in the event of a default would be limited to the proceeds from the foreclosure sale of the Property. The court found further that Fannie Mae had suffered no damages as a result of the recording of the materialman's liens and thus could not prevail. The court noted that "by late May/early June 2010, [Fannie Mae] was aware of the liens[, but] never demanded that [Appellees] remedy the liens nor took any affirmative steps itself to have the liens removed."

The trial court concluded that the contract was ambiguous, noting the contract's "silen[ce] as to what exactly would happen in the event a materialmen's or mechanic's lien [was] not bonded off, released of record, or otherwise remedied to [Fannie Mae's] satisfaction within 30 days of the date of creation." According to the court,

> [t]he Security [Deed] does not state that upon the occurrence of any of these actions, the filing of a materialm[an's] lien[ would] constitute "an Event of Default[.]" If [Fannie Mae] had desired this outcome, it could have drafted the contract in a manner that clearly specified that if these

liens are not satisfied to [Fannie Mae's] satisfaction then an event of default will occur with all the remedies that would flow there from. Fannie Mae did not do that and in fact put [the provision at issue] in a specific section stating that it would not be an Event of Default.

Thus, construing the contract against Fannie Mae, as the drafter, the court concluded that the filing of the materialman's liens did not constitute an "Event[ ] of Default" under the contract.

Contrary to the trial court's conclusion, we find that the Note is unambiguous: Paragraph 9 (c) (2) made Las Colinas personally liable in the event of "a Transfer that is an Event of Default under Section 21 of the Security [Deed]," thereby entitling Fannie Mae to the entire unpaid principal balance on the Note, plus interest and other sums due. The Security Deed is also unambiguous: A "Transfer" under Section 1 (z) included "the granting, creating or attachment of a lien (whether voluntary, involuntary or by operation of law)." Such Transfer of an interest in the mortgaged property constituted a default under Section 21(a) of the Security Deed unless the lien was removed, released, or otherwise remedied to Fannie Mae's satisfaction within 30 days of its creation.

Further, the trial court erred in finding that Section 21 was "silent" on what would happen if a materialman's lien was not bonded off, released of record, or

otherwise remedied to Fannie Mae's satisfaction within 30 days of the date of creation.[6] While Section 21 (a) stated that any Transfer of an interest in the Property (including the creation of a lien) constituted a default, Section 21 (b) specifically created an exception for a materialman's lien *only* if it was satisfied within 30 days of the date of creation. Thus, the only logical conclusion is that any materialman's lien that did *not* meet this requirement constituted a default under the plain language of the Note and Security Deed.

The Guaranty is likewise unambiguous: as Key Principal, Gross "absolutely, unconditionally and irrevocably agree[d] to pay to [Fannie Mae], on demand, all amounts for which [Las Colinas] [was] personally liable under Paragraph 9 of [the Note]." Thus, the plain and ordinary meaning of the Guaranty is that Gross was personally liable on the Note, and the trial court erred in finding otherwise.[7]

---

[6] See *Triple Eagle Assocs. v. PBK, Inc.*, 307 Ga. App. 17, 24 (2) (c) (704 SE2d 189) (2010) ("A contract is not ambiguous, even though difficult to construe, unless and until an application of pertinent rules of interpretation leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties. And under the pertinent rules of contract interpretation, the construction of a particular phrase that will uphold a contract in its entirety is preferred, and the entire contract must be looked at in the construction of any of its parts.") (punctuation and footnotes omitted).

[7] See *Core LaVista, LLC v. Cumming*, 308 Ga. App. 791, 794 (1) (a) (709 SE2d 336) (2011) ("Because the documents' provisions are clear, the court's proper role

2. Fannie Mae contends that the trial court erred in basing its holding that Appellees were not liable for the deficiency on its finding that Fannie Mae "suffered no damages as a result of the recording of the materialm[a]n's liens." We agree.

If an Event of Default occurred, Paragraph 6 of the Note allowed Fannie Mae to accelerate the loan, thereby causing the entire unpaid principal balance and other amounts due under the Note to become immediately due and payable. In such case, Paragraph 10 (a) (2) of the Note provided in relevant part:

> Upon [Fannie Mae's] exercise of any right of acceleration under this Note, [Las Colinas] shall pay to [Fannie Mae], in addition to the entire unpaid principal balance of this Note outstanding at the time of the acceleration, (i) all accrued interest and all other sums due [Fannie Mae] under this Note and the other Loan Documents, and (ii) the prepayment premium calculated pursuant to Schedule A.

Further, Las Colinas acknowledged that the prepayment premium represented "a reasonable estimate of the damages [Fannie Mae] w[ould] incur because of a prepayment[,]" whether voluntary or involuntary.

---

was to apply the terms as written. If no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. That is, where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties.") (punctuation and footnote omitted).

Appellees admitted that Las Colinas failed to make all payments due pursuant to the Note. This failure "to pay . . . when due any amount required by the Note[ ]" was an "Event of Default[,]" which triggered the Acceleration clause of the Note. Because the materialman's liens were not resolved to Fannie Mae's satisfaction, the liens served as a trigger to activate Appellees' personal liability on the Note.

Although the trial court stated that it could "discern no harm caused by lapsed liens that would enable [Fannie Mae] to a windfall judgment[,]" "competent parties are free to choose, insert, and agree to whatever provisions they desire in a contract unless prohibited by statute or public policy."[8] Moreover, Fannie Mae obtained an order confirming the foreclosure sale under OCGA § 44-14-161[9] and, thus, met its "burden of proof of showing the amount of loss in a manner in which the trial judge

---

[8] *Core LaVista, LLC*, 308 Ga. App. at 795 (1) (b) (punctuation and footnote omitted).

[9] "OCGA § 44-14-161 requires judicial approval of foreclosure sales under power of sale before the foreclosing party may bring an action to obtain a deficiency judgment. . . . The statute . . . requir[es] speedy judicial review of the notice, advertisement, and regularity of the sale; insur[es] that the property sold for a fair value; and protect[s] debtors from deficiency judgments when the forced sale brings a price lower than fair market value." *Alliance Partners v. Harris Trust & Sav. Bank*, 266 Ga. 514 (1) (467 SE2d 531) (1996) (footnotes omitted).

[could] calculate the amount of the loss with a reasonable degree of certainty."[10] According to the undisputed evidence, in the form of an affidavit of Roy Miller, a senior asset manager for Fannie Mae, the deficiency amount was $9,863,458.55.[11]

Accordingly, we reverse the trial court's summary judgment order in favor of Appellees and remand this case for the trial court to enter summary judgment in favor of Fannie Mae on liability. The trial court is also directed to determine damages, including any interest and attorney fees.

*Judgment reversed and case remanded. Barnes, P. J., and McMillian, J., concur.*

---

[10] See *Mashburn Constr., L. P. v. CharterBank*, 340 Ga. App. 580, 584 (3) (798 SE2d 251) (2017) (punctuation and footnote omitted).

[11] Miller calculated the loan payoff of $15,099,883.10 by adding the unpaid principal balance of $12,500,000; interest from April 1, 2010, through June 30, 2010, of $184,843.76; fees and costs of $10,500; and a prepayment premium of $2,404,539.34. Miller applied credits of $5,236,424.55, including the $5,000,000 foreclosure sale price to calculate the deficiency amount.